FINESSE G. COUCH, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF CARNELL SIMMONS COUCH, PLAINTIFF v. PRIVATE DIAGNOSTIC CLINIC AND DUKE UNIVERSITY, DEFENDANTS

No. COA00-1032

(Filed 6 November 2001)

## 1. Attorneys— attorney misconduct—sanctions—standard of review

The proper standard for appellate review of the propriety of a trial court's sanctions imposed upon an attorney for violations of the Rules of General Practice for the Superior and District Courts and the Rules of Professional Conduct is abuse of discretion.

## 2. Attorneys— attorney misconduct—sanctions—attorney fees—inherent power of trial court

The trial court had authority to order plaintiff's attorney to pay attorney fees for her violations of the Rules of General Practice for the Superior and District Courts and the Rules of Professional Conduct even though no statutory authority exists for the imposition of fees, because the trial court has inherent authority to sanction attorneys for misconduct including the imposition of attorney fees.

## 3. Appeal and Error— appealability—issue previously decided by Supreme Court

Although a pro hac vice attorney contends she was denied due process of law when our Supreme Court determined that she was in violation of the Rules of General Practice for the Superior and District Courts and the Rules of Professional Conduct even though the Supreme Court allegedly failed to give her notice or an opportunity to be heard on the issue, the Court of Appeals is not at liberty to revisit issues previously decided by our Supreme Court and the only issue properly before the Court of Appeals is whether the trial court's imposition of sanctions was proper and appropriate as mandated by the Supreme Court.

## 4. Attorneys— misconduct—sanctions—attorney fees—customary fee for like work

Although the trial court did not abuse its discretion by imposing various sanctions on an attorney admitted in this state pro hac vice based on the attorney's misconduct concerning her charac-

COUCH v. PRIVATE DIAGNOSTIC CLINIC

[146 N.C. App. 658 (2001)]

terization of the veracity of defense witnesses and opposing counsel during her closing argument to the jury in a medical malpractice action, the record does not provide ample basis for determining whether the trial court's sanction of $53,274.50 in attorney fees is error because it cannot be held that it is reasonable to require opposing counsel to reimburse attorney fees that are not objectively reasonable based upon a determination of what is customarily charged for such services in the profession.

Appeal by Maria P. Sperando, attorney for plaintiff, from orders entered 31 March 2000 and 1 June 2000 by Judge Catherine C. Eagles in Durham County Superior Court. Heard in the Court of Appeals 15 August 2001.

*McMillan, Smith & Plyler, by Stephen T. Smith, for appellant Maria P. Sperando.*

*North Carolina State Bar, by Carolin Bakewell; Attorney General Roy A. Cooper, III, by Assistant Attorney General Staci Tolliver Meyer, for the State.*

HUNTER, Judge.

Appellant Maria P. Sperando ("Sperando") appeals an order of the trial court imposing sanctions for her violations of the North Carolina Rules of General Practice for the Superior and District Courts and the Rules of Professional Conduct. For reasons set forth herein, we reverse and remand on the issue of attorney's fees, but affirm the remainder of the trial court's order.

Sperando, an attorney licensed to practice in Florida and New York, was admitted *pro hac vice* to represent Finesse G. Couch ("Couch"), the plaintiff in the underlying medical malpractice action against Private Diagnostic Clinic and Duke University (collectively "defendants"). During trial, Sperando was delivering her closing argument to the jury when she made several statements regarding the veracity of the defense witnesses and opposing counsel.

Sperando characterized defense witnesses and opposing counsel as liars approximately nineteen times during her closing argument, including such statements as, defense witnesses "came up here and told lies. In your face lies"; " '[t]here is nothing worse than a liar because you can't protect yourself from a liar. . . . [T]hese people, and

all the doctors that they paraded in here who told you lie, after lie, after lie' "; " '[t]hey lied to your face, blatantly. They didn't care. They tried to make fools of everybody in the courtroom' "; ". . . '[t]hat's not even—that's not shading the truth . . . . How is that not a lie? How is that not a lie?' "; " '[s]o you see, when I say a lie, okay, I want the record to reflect that I mean a lie' "; ". . . 'how do you think that they intend to get out from under all these lies?' "; " '[t]his is another blatant lie' "; " '[defense counsel] parade[d] these witnesses in one after another and lied to your face. I mean, they were not even smooth about it.' " *Couch v. Private Diagnostic Clinic,* 133 N.C. App. 93, 97, 515 S.E.2d 30, 34-35, *affirmed,* 351 N.C. 92, 520 S.E.2d 785 (1999).

Sperando also questioned the veracity of defense counsel in front of the jury, referring to all of the lies that defense witnesses told and defense counsel ". . . 'knew before [the witnesses] put their hands on the Bible that they were going to tell those lies and [defense counsel] put them up anyway. That's heavy. That's a heavy accusation.' " *Id.* Defense counsel made one initial objection to Sperando's statements, which objection was overruled by the trial court.

At the close of the trial, the jury returned a verdict in favor of Couch. Defendants appealed. This Court reversed as to Private Diagnostic Clinic on an unrelated issue. *See Couch,* 133 N.C. App. at 104, 515 S.E.2d at 39. A divided panel affirmed the verdict against Duke University despite its argument that Sperando's conduct was prejudicial and required the granting of a new trial. *Id.* All three judges expressed concern over Sperando's conduct, with the dissent taking the position that Duke University was entitled to a new trial as a result of Sperando's "grossly improper" conduct. *Id.* at 105, 515 S.E.2d at 39.

Duke University then appealed to our Supreme Court on the sole ground that Sperando's conduct was prejudicial to the defense, requiring a new trial. The Supreme Court evenly split on the issue of remanding the case for a new trial, thereby allowing this Court's decision to affirm to stand without precedential value. *See Couch v. Private Diagnostic Clinic,* 351 N.C. 92, 520 S.E.2d 785. However, a unanimous Supreme Court characterized Sperando's conduct as "grossly improper." *Id.* at 93, 520 S.E.2d at 785. The Supreme Court determined that the trial court had erred in failing to sustain defense counsel's initial objection or to subsequently intervene *ex mero motu* to prevent Sperando's conduct. *Id.* A unanimous Supreme Court concluded:

Furthermore, this Court, being of the opinion that plaintiff's counsel's conduct violated Rule 12 of the General Rules of Practice for the Superior and District Courts and was not in conformity with the Rules of Professional Conduct, remands this cause to the trial court for the determination of an appropriate sanction.

*Id.*

On remand, a hearing was held on 9 February 2000. The judge from the original trial testified that Sperando appeared to be professional throughout the trial. He also stated that he did not sustain the objection to Sperando's comments because he did not think that her conduct constituted a violation of any rule.

On 31 March 2000, the trial court entered an order imposing sanctions against Sperando. However, on 30 May 2000, the trial court entered an order withdrawing the 31 March 2000 order on its own motion. In the trial court's order of withdrawal, it noted that during the hearing, Sperando testified under oath that the only time she had ever been disciplined by a court or a state bar for improper conduct was when she "was late once and that was the only time." In its order of withdrawal, the trial court found that Sperando and her attorney had failed to disclose a 9 December 1999 order from the Superior Court of Guilford County which found Sperando to be in violation of several rules, including the Rules of Professional Conduct. The order from Guilford County determined that Sperando had "conducted herself in a reprehensible manner in wilful violation of [the rules]," and concluded that her *pro hac vice* status in that case must be revoked.

On 1 June 2000, the trial court entered an amended order sanctioning Sperando. The trial court's order, which included twenty-seven pages of extensive and thorough factual findings, authority, and conclusions, imposed the following sanctions upon Sperando: (1) a censure; (2) revocation of her *pro hac vice* status to represent Couch; (3) a partial reimbursement to Duke University for its attorney's fees in the amount of $53,274.50; (4) reimbursement to Couch for any costs she incurred in defending the appeal to the Supreme Court; (5) withdrawal from any cases pending in North Carolina in which Sperando represented clients, and a one year suspension of Sperando's ability to practice *pro hac vice* in North Carolina; (6) the requirement that Sperando report the order as an Order of Discipline when required to do so; (7) the requirement that prior to again being

admitted to practice in the State *pro hac vice*, Sperando attend continuing legal education classes, and attach a copy of the court's order and an affidavit showing compliance with the order to any motion to appear *pro hac vice* in North Carolina for the next five years; (8) that its order be delivered to the state bars of Florida and New York; and (9) that Sperando file an affidavit with supporting documentation by 14 July 2000 establishing her compliance with the order. Sperando appeals.

We address the following issues in this appeal: (1) the appropriate standard of appellate review of the trial court's order of sanctions; (2) Sperando's argument that the trial court was without authority to impose attorney's fees as a sanction; (3) Sperando's argument that she was denied due process of law when the Supreme Court determined her to be in violation of the Rules of General Practice and Rules of Professional Responsibility; (4) Sperando's argument that the trial court's imposition of sanctions was "excessive and disproportionate"; and (5) Sperando's argument that the trial court's findings and conclusions are not supported by sufficient evidence.

## I. Standard of Review

**[1]** The State argues that the proper standard for this Court's review of the propriety of the trial court's sanctions is abuse of discretion. Sperando argues that this Court must sit as one of original jurisdiction on such issues. Indeed, it does not appear that this Court or our Supreme Court has clearly determined the proper standard for appellate review of the propriety of a trial court's sanctions imposed upon an attorney for violations of the General Rules of Practice for the Superior and District Courts and the Rules of Professional Conduct. However, we find instructive existing case law applicable to the review of sanctions imposed under our Rules of Civil Procedure, and in cases involving the trial court's exercise of its inherent authority.

In general, this Court exercises *de novo* review over whether to sanction an attorney under Rule 11 of our Rules of Civil Procedure. *Page v. Roscoe LLC*, 128 N.C. App. 678, 680, 497 S.E.2d 422, 424 (1998). However, once it is determined that sanctions were proper, ". . . 'we must review the actual sanctions imposed under an abuse of discretion standard.' " *Id.* at 680, 497 S.E.2d at 424 (quoting *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365, *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994)); *see also, e.g., VSD Communications, Inc. v. Lone Wolf Publishing Group*, 124 N.C. App. 642, 644-45, 478 S.E.2d 214, 216 (1996).

It is equally well-established that the propriety of sanctions imposed for violation of discovery orders or other rules violations is reviewed for abuse of discretion. *See State v. Weeks*, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988) (although trial court "not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, is within the trial court's discretion"); *see also, e.g., Crutchfield v. Crutchfield*, 132 N.C. App. 193, 195, 511 S.E.2d 31, 33-34 (1999); *Hursey v. Homes By Design, Inc.*, 121 N.C. App. 175, 177, 464 S.E.2d 504, 505 (1995); *Goss v. Battle*, 111 N.C. App. 173, 177, 432 S.E.2d 156, 159 (1993).

Moreover, a trial court's revocation of an attorney's ability to practice *pro hac vice* is reviewed under an abuse of discretion standard. *Smith v. Beaufort County Hosp. Ass'n.*, 141 N.C. App. 203, 540 S.E.2d 775 (2000), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 435, *affirmed*, 354 N.C. 212, 552 S.E.2d 139 (2001). In *Smith*, this Court recognized that the plain language of N.C. Gen. Stat. § 84-4.2 (1999) (allowing summary revocation of *pro hac vice* status), gives the trial court discretion to summarily revoke an attorney's ability to practice *pro hac vice. Id.* at 210, 540 S.E.2d at 780. We stated that "the express language of N.C. Gen. Stat. § 84-4.2 allows a superior court judge the authority and discretion to summarily revoke an earlier order granting *pro hac vice* admission pursuant to § 84-4.1." *Id.*

Most importantly, the proper standard of review for an act of the trial court in the exercise of its inherent authority is abuse of discretion. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 115 L. Ed. 2d 27, *reh'g denied*, 501 U.S. 1269, 115 L. Ed. 2d 1097 (1991), the United States Supreme Court stated, "[w]e review a court's imposition of sanctions under its inherent power for abuse of discretion." *Id.* at 55, 115 L. Ed. 2d at 52.

North Carolina case law is equally clear that the exercise of a court's inherent authority is reviewed for abuse of discretion. *See, e.g., State v. Golphin*, 352 N.C. 364, 391, 533 S.E.2d 168, 190 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001); *In re Buck*, 350 N.C. 621, 625, 516 S.E.2d 858, 861 (1999); *State v. Warren*, 347 N.C. 309, 324-25, 492 S.E.2d 609, 617 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998).

Sperando relies upon three cases for the proposition that our proper standard of review is one of "original jurisdiction." Upon close review, however, each of these cases is distinguishable from the

present case. Two such cases cited by plaintiff, *In re Robinson*, 37 N.C. App. 671, 247 S.E.2d 241 (1978), and *In re Dale*, 37 N.C. App. 680, 247 S.E.2d 246 (1978), arose out of the same factual background and contain identical language pertinent to the issue before us.

In those cases, however, we determined that the trial judge erred in failing to recuse himself from hearing the merits of the disciplinary proceedings, and we vacated the trial court's order of discipline in both cases. *Robinson*, 37 N.C. App. at 679, 247 S.E.2d at 246; *Dale*, 37 N.C. App. at 685, 247 S.E.2d at 249. Once the trial court's order of discipline was vacated, this Court invoked its own inherent authority to review, *de novo*, the merits of the disciplinary proceeding to prevent the need for remanding the case for a new hearing. *Robinson*, 37 N.C. App. at 679, 247 S.E.2d at 246; *Dale*, 37 N.C. App. at 685, 247 S.E.2d at 249. A close reading of *Robinson* and *Dale* reveals that this Court never reviewed the underlying order, but elected to exercise its own inherent authority. We were therefore well within our authority in those cases to review the imposition of sanctions *de novo*.

We do not find such cases instructive in the instant case. There are no allegations that the trial court's order in this case is affected by judicial misconduct, nor are there other factors which would require that the order be vacated. Unlike *Robinson* and *Dale*, we must review the order entered by the trial court.

Nor do we find instructive *Swenson v. Thibaut*, 39 N.C. App. 77, 250 S.E.2d 279 (1978), *appeal dismissed and disc. review denied*, 296 N.C. 740, 254 S.E.2d 181 (1979), upon which Sperando also relies. This Court in *Swenson* did not review the propriety of a trial court's imposition of sanctions. Rather, we reviewed, *de novo*, whether the trial court correctly found that no ethical violations of the Code of Professional Responsibility occurred. *Id.* at 108, 250 S.E.2d at 299. Such a review is consistent with the standard we enumerated above as applied to Rule 11 of the Rules of Civil Procedure. *See Page*, 128 N.C. App. at 680, 497 S.E.2d at 424. To the extent *Swenson* cites and relies upon *Robinson* and *Dale*, we re-emphasize again that those cases did not involve review of an underlying disciplinary order, but rather, the exercise of this Court's own inherent authority.

In sum, Sperando has failed to cite persuasive authority for the proposition that this Court sits as one of original jurisdiction when reviewing the propriety of disciplinary sanctions imposed by a trial court. To the contrary, the case law involving our Rules of Civil Procedure and the exercise of the court's inherent authority to disci-

pline attorneys indicates that such a review warrants an abuse of discretion standard. Therefore, we review the trial court's order of sanctions in this case for abuse of discretion.

## II. Attorney's Fees as a Sanction

[2] Sperando argues that the trial court's sanction of attorney's fees was error because the trial court did not have express statutory authority to impose fees in this context. Although we agree with Sperando that no statutory authority exists for the imposition of fees here, we nevertheless hold that the trial court had authority to order Sperando to pay attorney's fees for her violation of the Rules of General Practice for the Superior and District Courts and the Rules of Professional Conduct.

In its order, the trial court addressed the issue of its authority to impose attorney's fees as a sanction. The trial court noted that the general rule requires express statutory authority for the imposition of attorney's fees; however, as the trial court noted, the court has inherent authority to sanction attorneys for misconduct, which sanctions may include the imposition of attorney's fees, irrespective of statutory authority.

All courts are vested with inherent " ' "authority to do all things that are reasonably necessary for the proper administration of justice." ' " *State v. Buckner*, 351 N.C. 401, 411, 527 S.E.2d 307, 313 (2000) (citations omitted); *See Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987). "Inherent power is that which a court necessarily possesses irrespective of constitutional provisions. . . . Such power may not be abridged by the legislature and is essential to the court's existence and the orderly and efficient administration of justice." *Buckner*, 351 N.C. at 411, 527 S.E.2d at 313.

"This Court has the inherent power to deal with its attorneys." *Beard*, 320 N.C. at 130, 357 S.E.2d at 696 (holding trial court has authority to order attorneys to make payments to Client Security Fund). " 'The power is based upon the relationship of the attorney to the court and the authority which the court has over its own officers to prevent them from, or punish them for, committing acts of dishonesty or impropriety calculated to bring contempt upon the administration of justice.' " *Id.* (quoting *In re Burton*, 257 N.C. 534, 542-43, 126 S.E.2d 581, 587-88 (1962)).

In *In re Hunoval*, 294 N.C. 740, 744, 247 S.E.2d 230, 233 (1977), our Supreme Court noted that this inherent authority encompasses

not only the "power but also the duty to discipline attorneys, who are officers of the court, for unprofessional conduct." *Id.* (citing Canon 3B(3), N.C. Code of Judicial Conduct). "Unprofessional conduct subject to this power and duty includes 'misconduct, malpractice, or deficiency in character,' . . . and 'any dereliction of duty except mere negligence or mismanagement.' " *Id.* (quoting *Burton*, 257 N.C. at 542, 126 S.E.2d at 587). "Even absent an express grant of authority . . . trial courts have inherent authority to impose sanctions for wilful failure to comply with the rules of court." *Few v. Hammack Enter., Inc.*, 132 N.C. App. 291, 298, 511 S.E.2d 665, 670 (1999) (holding trial court has inherent authority to sanction parties for violation of Rules of Mediation); *see also Cloer v. Smith*, 132 N.C. App. 569, 573, 512 S.E.2d 779, 782 (1999) (trial court retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in Rules).

In *Robinson*, 37 N.C. App. at 676, 247 S.E.2d at 244, this Court noted that the inherent power of the court to discipline attorneys includes the imposition of monetary sanctions:

> There is no question that a Superior Court, as part of its inherent power to manage its affairs, to see that justice is done, and to see that the administration of justice is accomplished as expeditiously as possible, has the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. Sanctions available include citations for contempt, censure, informing the North Carolina State Bar of the misconduct, imposition of costs, suspension for a limited time of the right to practice before the court, suspension for a limited time of the right to practice law in the State, and disbarment.

*Id.* (citations omitted); *see also, e.g., Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987) ("[s]imilarly, we hold it to be within the inherent power of the trial court to order plaintiff to pay defendant's reasonable costs including attorney's fees for failure to comply with a court order").

In *Chambers*, 501 U.S. at 44, 115 L. Ed. 2d at 44, the United States Supreme Court reaffirmed that all courts have inherent authority to punish lawyers for ". . . 'disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.' " *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798, 95 L. Ed. 2d 740 (1987)). It further stated that "[a] primary aspect of that discretion is the ability

to fashion an appropriate sanction for conduct which abuses the judicial process," including the "assessment of attorney's fees." *Id.* at 44-45, 115 L. Ed. 2d at 45.

In *Chambers*, the United States Supreme Court reviewed the propriety of the trial court's imposition of sanctions in the amount of the opposing party's full attorney's fees for the attorney's bad faith conduct. The Court determined that the trial court's imposition of attorney's fees as a sanction for the attorney's misconduct was not an abuse of discretion and was a proper exercise of the court's inherent authority. *Id.* at 55, 115 L. Ed. 2d at 52. We likewise hold that the trial court here had the inherent authority to impose attorney's fees as a sanction for Sperando's misconduct.

### III. Due Process

[3] Sperando next argues that she was denied due process of law when the Supreme Court determined that she was in violation of the Rules of General Practice and the Rules of Professional Conduct because the Supreme Court failed to give her notice or an opportunity to be heard on the issue. This Court is "not at liberty to revisit" issues previously decided by our Supreme Court. *State v. Stephenson*, 144 N.C. App. 465, 478, 551 S.E.2d 858, 867, *appeal dismissed and disc. review denied*, 354 N.C. 227, 554 S.E.2d 829 (2001). "On the remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure." *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 306 (1962) (Parker, J., concurring in the result); *see also, D & W, Inc. v. Charlotte*, 268 N.C. 720, 722, 152 S.E.2d 199, 202 (1966).

The issue of whether Sperando violated the Rules of General Practice and the Rules of Professional Conduct has already been determined by our Supreme Court. The only issue properly before this Court is whether the trial court's imposition of sanctions was proper and "appropriate," as mandated by the Supreme Court.

### IV. Extent of Sanctions Imposed

[4] Sperando next maintains that the trial court's order must be reversed because the sanctions imposed are "excessive and disproportionate" to other sanctions that have been imposed in this State for similar misconduct. Again, we review the trial court's order for abuse of discretion. "An '[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *State*

*v. Fowler*, 353 N.C. 599, 620, 548 S.E.2d 684, 699 (2001) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

The sole basis for Sperando's argument is that she cannot locate another case from this State wherein such severe sanctions have been imposed for similar misconduct. We agree with Sperando that there may not exist another case from this State wherein an attorney has received such harsh sanctions for similar conduct. However, the fact that no other court has imposed like sanctions for such behavior does not mandate a conclusion that the trial court has abused its discretion in ordering such sanctions here. Our Supreme Court has expressly rejected an identical argument in the context of attorney discipline. *See State Bar v. Frazier*, 269 N.C. 625, 636, 153 S.E.2d 367, 374, *cert. denied*, 389 U.S. 826, 19 L. Ed. 2d 81 (1967).

In *Frazier*, the appealing attorney had been suspended from the practice of law for one year for "corrupt" and "unprofessional conduct." Our Supreme Court noted:

> [The appealing attorney] complains that he has been singled out for prosecution; that others have been guilty of unethical conduct who have not been punished or who have not received as severe punishment as did he, and, in effect, because all have not been prosecuted and punished, he should not be.
>
> It is possible that others have not been apprehended, but if in the effort to enforce a high standard of conduct and ethics the Council should be required in each case to show the facts and results in every similar case it had investigated, the inquiry would go on endlessly.
>
> This is equivalent to the position that until all murderers, robbers, and other criminals have been convicted and punished, the remainder, even though their guilt is clearly established, should not be either. The fallacy of this position is apparent from a statement of his contentions.

*Id.* As stated in section .0100 of our State Bar Rules (Discipline and Disability of Attorneys):

> Discipline for misconduct is not intended as punishment for wrongdoing but is for the protection of the public, the courts, and the legal profession. The fact that certain misconduct has remained unchallenged when done by others, or when done at other times, or that it has not been made the subject of earlier dis-

ciplinary proceedings, will not be a defense to any charge of misconduct by a member.

R. N.C. St. B. B.0101, 2001 Ann. R. (N.C.) 317, 343.

Moreover, the recent trend in policing the legal profession more strictly renders prior case law on these issues less instructive. As our Supreme Court recently observed:

> We have viewed with concern the apparent decline in civility in our trial courts. This Court shall not tolerate, and our trial courts must not tolerate, comments in court by one lawyer tending to disparage the personality or performance of another. Such comments tend to reduce public trust and confidence in our courts and, in more extreme cases, directly interfere with the truthfinding function by distracting judges and juries from the serious business at hand. We admonish our trial courts to take seriously their duty to insure that the mandates of Rule 12 are strictly complied with in all cases and to impose appropriate sanctions if they are not.

*State v. Rivera*, 350 N.C. 285, 291, 514 S.E.2d 720, 723 (1999).

The most significant of the court's sanctions in this case are the immediate revocation of Sperando's ability to practice *pro hac vice* in North Carolina in all pending cases and for one year, and the order that she partially reimburse Duke University for attorney's fees in the amount of $53,274.50.

It is well-established that the " '[a]dmission of counsel in North Carolina *pro hac vice* is not a right but a discretionary privilege.' " *Smith*, 141 N.C. App. at 209, 540 S.E.2d at 779 (quoting *Leonard v. Johns-Manville Sales Corp.*, 57 N.C. App. 553, 555, 291 S.E.2d 828, 829 (1982)). Such a right is "permissive and subject to the sound discretion of the Court." *State v. Hunter*, 290 N.C. 556, 568, 227 S.E.2d 535, 542 (1976), *cert. denied*, 429 U.S. 1093, 51 L. Ed. 2d 539 (1977)).

Further:

> The right to appear *pro hac vice* in the courts of another state is not a right protected by the Due Process Clause of the Fourteenth Amendment. The Federal Constitution does not obligate state courts to grant out-of-state attorneys procedural due process in the grant or denial of their petition for admission to practice *pro hac vice* in the courts of the state.

*In re Smith,* 301 N.C. 621, 630, 272 S.E.2d 834, 840 (1981) (citations omitted). The purpose of the statutes governing an attorney's ability to be admitted *pro hac vice* " 'is to afford [North Carolina] courts a means to control out-of-state counsel and to assure compliance with the duties and responsibilities of attorneys practicing in this State.' " *Smith,* 141 N.C. App. at 209, 540 S.E.2d at 779 (citation omitted).

Under N.C. Gen. Stat. § 84-28, attorneys admitted to practice *pro hac vice* are subject to the same disciplinary jurisdiction of this State as are attorneys licensed to practice here. That statute provides that a violation of the Rules of Professional Conduct of this State "shall be grounds for discipline," including disbarment or "[s]uspension for a period up to but not exceeding five years." N.C. Gen. Stat. § 84-28(b), (c)(2) (1999). Clearly, N.C. Gen. Stat. § 84-28 contemplates that an attorney admitted to practice *pro hac vice* in this State may be "suspended" from doing so for an extended period of time. *See also, Robinson,* 37 N.C. App. at 676, 247 S.E.2d at 244 (sanctions available against attorneys practicing in North Carolina include "suspension for a limited time of the right to practice before the court, [and] suspension for a limited time of the right to practice law in the State"). Moreover, N.C. Gen. Stat. § 84-4.2, providing courts with the ability to summarily revoke an attorney's *pro hac vice* status, in no way limits a court's ability to do so, simply stating that the court may revoke the status "on its own motion and in its discretion." N.C. Gen. Stat. § 84-4.2.

The trial court here examined in detail a variety of possible sanctions it could impose upon Sperando. The court enumerated various factors it considered in deciding to suspend Sperando from the ability to practice in this State for one year. The trial court weighed possible sanctions "in light of all of the evidence and the Court's duty to protect the public and the administration of justice." The Court, having observed Sperando as a witness during the hearing, noted that it had "serious concerns about Ms. Sperando's continued representation of clients in North Carolina," in light of her "repeated[] and reckless[]" violation of "clear North Carolina rules without any inquiry into whether her conduct was appropriate," and her lack of candor before the court.

The trial court also explained in detail its "concern that [Sperando] in the future will disregard North Carolina rules when she does not agree with them," and that "[h]er testimony and her conduct further demonstrate that she does not fully understand or appreciate the problems caused by [her conduct]." It further noted:

The Court has considered whether lesser sanctions and shorter time frames would be sufficient and has determined that they would not. The Court has further considered additional sanctions and longer time frames but in view of the fact that Ms. Sperando did apologize in open court, the serious effect [of] her well-publicized misconduct has no doubt already had on her reputation, the other mitigating factors reflected in this Order, and the other requirements of this Order, the Court finds that further sanctions would be unduly harsh for these violations and would serve no reasonable purpose. The Court has further considered a different mix of sanctions and time frames and finds that the sanctions imposed, taken together, are appropriate under all the circumstances.

(Footnote omitted.)

We emphasize that Sperando does not have a right to practice *pro hac vice* in this state. Her ability to do so is a privilege, the granting of which is entirely within the discretion of the court. Under N.C. Gen. Stat. § 84-28, attorneys practicing in this state, including those admitted *pro hac vice*, may be suspended from practice for up to five years for a violation of the Rules of Professional Conduct. The trial court's order in this case is comprehensive in its examination of the applicable law, and in its examination of all of the evidence, including equitable factors in favor of Sperando. We discern no abuse of the trial court's wide discretion in this matter.

With respect to the sanction of $53,274.50 in attorney's fees, the trial court found as follows:

The Court finds that the attorneys' fees incurred by [Duke University] on appeal of this case were reasonable given the amount of the verdict and the seriousness of the issue; those fees total almost $190,000. A substantial issue before the Court of Appeals and the only issue before the Supreme Court was whether Ms. Sperando had broken the rules in her closing argument, which Ms. Sperando did not concede and indeed strenuously contested . . . . Thus, most of [Duke University's] attorneys' fees on appeal were incurred as a direct result of Ms. Sperando's unethical and unprofessional behavior. . . .

The Court will require Ms. Sperando to pay to [Duke University] the sum of $53,274.50, which the Court finds to be the minimum

amount spent by [Duke University] on attorneys' fees related to proceedings before the Supreme Court and this Court in connection with Ms. Sperando's misconduct.

(Footnote omitted.)

Although the trial court specifically found that "[t]here is no evidence before the Court that these fees were not incurred or that they were unreasonable," the record does not provide ample basis for determining whether the trial court's finding is in error. The only supporting evidence in the record is the affidavit of Niccolo A. Ciompi, a member of Duke University's Counsel staff, who opined that the fees incurred by the University were reasonable. While we do not doubt that these fees were actually incurred by Duke University, or that the University may view such amounts as reasonable, we cannot hold that it is reasonable to require opposing counsel to reimburse for attorney's fees that are not objectively reasonable based upon a determination of what is customarily charged for such services in the profession. As this Court has noted in other contexts, an award of attorney's fees usually requires that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence. *See, e.g., Porterfield v. Goldkuhle*, 137 N.C. App. 376, 378, 528 S.E.2d 71, 73 (2000).

Ciompi's affidavit was accompanied by twenty-two pages of invoices charged to the University by the law firms of Maxwell, Freeman and Bowman, P.A. and Robinson, Bradshaw & Hinson, P.A., in connection with the University's single-issue appeal to the Supreme Court. The bills submitted by Maxwell, Freeman and Bowman, P.A. clearly detail the work performed in connection with the appeal, and particularly time spent on each task, totaling approximately $8,000.00. However, the bills submitted by Robinson, Bradshaw & Hinson, P.A., provide only a total amount due for services rendered. Although the bills detail the dates on which particular tasks were performed, the bills do not contain any information regarding how much time was spent on any particular task, what rate was charged for the performance of such tasks, how many attorneys performed work on the matter, nor how much money was actually charged for each task. The bills only list total sums owed by Duke University, totaling approximately $48,000.00, including approximately $42,526.00 in attorney's fees, $4,720.52 in computerized research, and $452.52 in other expenditures.

COUCH v. PRIVATE DIAGNOSTIC CLINIC

[146 N.C. App. 658 (2001)]

The trial court in this case failed to make any findings of fact regarding the reasonableness of the fees charged to Duke University on appeal to the Supreme Court in light of what is customarily charged for similar services. Nor does the record allow us to determine the exact origin of approximately $42,526.00 of fees charged to Duke University. The absence of such findings and evidence is especially troubling in light of the substantial amount of attorney's fees charged to Duke University for their appeal to the Supreme Court on the sole issue of Sperando's jury argument, an issue previously briefed and argued by the parties before this Court.

We therefore reverse the trial court's imposition of $53,274.50 in attorney's fees and remand for a new hearing on this issue, with a focus on the exact amounts charged to Duke University for particular legal services, and whether the amounts charged for these services are objectively reasonable based upon the custom of the profession for the providing of similar services.

We have reviewed the remaining sanctions imposed upon Sperando, such as the censure, the requirement that she report the order as an Order of Discipline when required to do so, her reimbursement to Couch for any expenses she incurred as a result of the appeal to the Supreme Court, and that the order be delivered to the state bars of Florida and New York. We conclude that the ordering of these sanctions was within the trial court's authority and that the trial court did not abuse its discretion in doing so. These assignments of error are overruled.

## V. Sufficiency of the Evidence

In her final argument, Sperando contends that the trial court's findings of fact and conclusions of law are not supported by sufficient evidence. We have carefully examined the record before us and conclude that, with the exception of the court's imposition of attorney's fees, the evidence was sufficient to support the trial court's findings of fact, which findings in turn support its conclusions of law.

We hereby affirm the trial court's imposition of all sanctions against Sperando except the requirement that she reimburse Duke University for its attorney's fees in the amount of $53,274.50. We remand to the trial court for a new hearing on the issue of attorney's fees.

Affirmed in part; reversed and remanded in part.

Judges TYSON and SMITH concur.