McCarthy v. Hampton, 2016 NCBC 4.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF VANCE | 14 CVS 1173 |

JAMES A. MCCARTHY, SR., M.D.,  )
     Plaintiff,     )
            )
   v.       )
            )
J. WELDON HAMPTON, M.D. and PREMIER )
WOMEN'S HEALTH PROFESSIONALS, P.A., )
     Defendants.  )
_____)
            )
            )
J. WELDON HAMPTON, M.D. and PREMIER )
WOMEN'S HEALTH PROFESSIONALS, P.A., )
    Counterclaim-Plaintiffs, )
            )
   v.       )
            )
JAMES A. MCCARTHY, SR., M.D. and PWHP )
REALTY, LLC,      )
    Counterclaim-Defendants.)

**ORDER REVOKING
PRO HAC VICE ADMISSION**

THIS MATTER comes before the Court upon its own Motion to Revoke Pro Hac Vice Admission of Attorney J. Andrew McCarthy, Jr. ("Attorney McCarthy"). This motion arises from Attorney McCarthy's conduct in the course of his representation of Plaintiff James A. McCarthy, Sr., M.D. ("Plaintiff McCarthy") in this action.[1]

THE COURT, having considered the factual and procedural background of this matter and other appropriate matters of record, FINDS and CONCLUDES as follows:

*Background Facts*

1. The factual and procedural background of this matter has been more fully discussed in other Court orders, including the July 1, 2015 Order on Motion to Enforce

---

[1] Attorney McCarthy is licensed to practice law in Florida, and was admitted *pro hac vice* in this action by Order dated December 8, 2014.

Settlement Agreement ("Order Enforcing Settlement"), and the Court will limit discussion in this order to those facts necessary to determination of this motion.

2. On March 6, 2015, the parties held a mediation. At the conclusion of the mediation, the parties entered into a written mediated settlement agreement memorializing the terms of a settlement of all claims. Counsel, including Attorney McCarthy, signed the agreement. Defendants' counsel, Steve Petersen ("Petersen") sent the Court an email advising that the parties had reached a settlement. Attorney McCarthy was copied on Petersen's email but at no time did Attorney McCarthy notify the Court that he had any disagreement with Petersen's characterization that the parties had reached a settlement.

3. On April 2, 2015, Defendants filed a motion to enforce the mediated settlement agreement after Attorney McCarthy proved uncooperative in reducing the settlement to a more formal, written agreement. On June 3, 2015, the Court held a hearing on the motion to enforce the mediated settlement at which Attorney McCarthy appeared on behalf of Plaintiff. On July 1, 2015, the undersigned issued the Order Enforcing Settlement. In that Order, the Court enforced the mediated settlement agreement. Among the terms that the Court enforced was Plaintiff McCarthy's agreement to pay $155,000.00 to Defendant Premier Women's Health Professionals, PA. The Court ordered that the $155,000.00 payment be made no later than July 22, 2015. The Order Enforcing Settlement also required an appraisal of the real property held by PWHP Realty LLC. At no time during the Court's consideration of the motion to enforce did Attorney McCarthy raise any issue regarding Plaintiff McCarthy's financial ability to make the $155,000.00 payment or otherwise claim that Plaintiff McCarthy lacked the means to make the payment.

4. Plaintiff McCarthy did not make the $155,000.00 payment on July 22, 2015. More troubling, Attorney McCarthy did not provide any notice to Defendants that the payment would not be made, nor did Attorney McCarthy provide any explanation for failing

to make this payment until five days after the deadline for payment passed.[2] On July 27, 2015, Attorney McCarthy sent an email to Petersen contending that Plaintiff McCarthy "does not have the money and cannot make the payment" required by the Court's Order.[3]

5. Attorney McCarthy also refused to participate in the appraisal process required by the Order Enforcing Settlement. This dispute is more fully discussed in the Court's Order on Valuation, entered on November 19, 2015. In sum, Attorney McCarthy contended that the current lease for the real property at issue was invalid and refused to participate in an appraisal that permitted the parties' appraisers to consider the lease. Instead of raising the issue with the Court or working to resolve the issue between the parties, Attorney McCarthy simply threatened further litigation to resolve the issue, resulting in an impasse that required Court intervention to resolve.[4]

6. On July 28, 2015, Defendants filed a Motion for Order to Show Cause seeking an order of civil contempt against Plaintiff McCarthy for his failure to make the required settlement payment. On November 16, 2015, the Court held a hearing on the Motion for Order to Show Cause at which Attorney McCarthy and Plaintiff McCarthy appeared. At that hearing, Attorney McCarthy told the Court that Plaintiff McCarthy lacked the financial means to pay the $155,000 payment at the time he signed the mediated settlement agreement and at the time that Attorney McCarthy had appeared for the June 3, 2015 hearing with the Court, but conceded he had not raised this issue with the Court or directly with Defendants before the entry of the Order Enforcing Settlement or the payment deadline.

7. On November 19, 2015, the Court entered its Amended Order to Show Cause ("Show Cause Order"). Plaintiff McCarthy was ordered to appear at the Vance County

---

[2] Petersen Aff. (July 28, 2015) ¶ 17.
[3] Mot. Appear & Show Cause, Ex. C.
[4] *See generally* Order on Valuation.

Courthouse on December 2, 2015, and show cause why he should not be held in contempt for his failure to make the $155,000.00 payment ordered in the Order Enforcing Settlement. The Show Cause Order required Plaintiff McCarthy to provide the Court with certain financial records to enable the Court to evaluate the contention that Plaintiff McCarthy lacked the ability to comply with the Order Enforcing Settlement.

8. On November 30, 2015, two days prior to the scheduled hearing, Attorney McCarthy notified the Court by email that Plaintiff McCarthy "ha[d] filed bankruptcy." The Court requested a filed copy of Plaintiff McCarthy's bankruptcy petition. In response, Attorney McCarthy submitted a bankruptcy petition that was signed by Plaintiff McCarthy but did not bear any file-stamp or other evidence of actual filing. Nevertheless, on the representation that the petition had been filed, the Court continued the December 2 show cause hearing.

9. On December 1, 2015, Petersen informed the Court that he was unable to find any record of a petition for bankruptcy having been filed in either the Middle or Eastern districts of North Carolina.[5] The Court then requested that Attorney McCarthy provide a filing receipt for Plaintiff McCarthy's bankruptcy petition and provide the case number assigned to Plaintiff McCarthy's bankruptcy case. No filing receipt or case number was provided on December 1. On the afternoon of December 2, 2015, Attorney McCarthy sent an email to the Court and Peterson claiming that Plaintiff McCarthy had filed "a duplicate copy of the petition" on December 2, 2015, and provided a case file number for that filing in the United States Bankruptcy Court for the Eastern District of North Carolina.

---

[5] J. Thomas Burnette ("Burnette"), Plaintiff McCarthy's local counsel, similarly contacted the Court on December 1st and noted that he could not find any record of Plaintiff's McCarthy's petition having actually been filed.

10.     On December 3, 2015, Attorney McCarthy provided a lengthy explanation of the alleged chronology surrounding Plaintiff McCarthy's bankruptcy filing. In short, Attorney McCarthy claimed that Plaintiff McCarthy mailed the petition to the Bankruptcy Court on November 30, 2015, and believing that to constitute filing, informed Attorney McCarthy that the petition had been filed. Attorney McCarthy did not take any steps to confirm that the petition had been filed, but proceeded to inform the Court that Plaintiff McCarthy "had filed" the petition. Attorney McCarthy concedes that no petition was actually filed on November 30 as represented, or at any time before December 2, 2015.

*Analysis*

11.     It is well established that the authority to discipline lawyers rests within the Court's inherent authority. "This power is based upon the relationship of the attorney to the court and the authority which the court has over its own officers to prevent them from, and punish them for, acts of dishonesty or impropriety calculated to bring contempt upon the administration of justice." *In re Northwestern Bonding Co.*, 16 N.C. App. 272, 275 (1972). When imposing sanctions based on the Court's inherent authority, North Carolina appellate courts review the propriety of those sanctions under an abuse of discretion standard. *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 664 (2001).

12.     The Court is also granted wide latitude to revoke the admission of an attorney admitted on a pro hac vice basis. *See* N.C. Gen. Stat. § 84-4.2 (providing that pro hac vice admission "may be summarily revoked by the General Court of Justice . . . on its own motion and in its discretion"). The authority provided by the statute governing pro hac vice admission is to ensure "a means to control out-of-state counsel and to assure compliance with the duties and responsibilities of attorneys practicing in this State." *Couch*, 146 N.C. App. at 670. The decision to revoke a pro hac admission is committed to the discretion of the trial court. *Id.* at 663. Notably, revocation of pro hac vice admission is not dependent on a "change

in circumstances, misconduct," or any other evidentiary showing. *Smith v. Beaufort Cnty. Hosp. Ass'n*, 141 N.C. App. 203, 212 (2000).[6] Based on this discretionary standard, appellate courts have affirmed not only a revocation of pro hac vice admission, but a revocation coupled with a prospective prohibition on practicing law within the State. *See Couch*, 146 N.C. App. at 669-71.

13. Here, the Court concludes that Attorney McCarthy has engaged in a course of conduct that justifies not only revocation of his current pro hac vice admission, but also a further prohibition on his ability to practice law in this State. This conduct has needlessly prolonged this litigation, resulted in a substantial and unnecessary expenditure of time and resources by the Court and Defendants, and has interfered with this Court's administration of justice.

14. Specifically, the Court concludes that Attorney McCarthy's unexplained failure to timely raise critical issues in this action has hindered the Court's ability to resolve this matter. For example, Plaintiff McCarthy allegedly was not able to pay the agreed upon settlement payment at the time he entered into the mediated settlement agreement and at the time the Court entered the Order Enforcing Settlement. Attorney McCarthy did not notify Peterson that his client could not pay the settlement until after he failed to make the Court ordered payment. Attorney McCarthy did not inform the Court of Plaintiff McCarthy's alleged inability to pay the settlement until faced with the Motion for Order to Show Cause. While the Court is highly troubled that it took a motion to show cause for Attorney McCarthy to provide this information to the Court, it is more troubling that Attorney McCarthy allowed his client to face the possibility of civil contempt before notifying the Court about the issue.

---

[6] Additionally, the authority to revoke an attorney's pro hac vice admission is not limited to the judge who initially granted admission, but can be exercised by any judge of the General Court of Justice. *Smith*, 141 N.C. App. at 208.

This course of conduct, for which Attorney McCarthy has provided no explanation, falls far below the standard the Court expects from the practicing bar.

15. Even more significant are Attorney McCarthy's misrepresentations and obfuscations regarding the filing of the bankruptcy petition, and that Attorney McCarthy's explanation of the bankruptcy filing issue was not provided to the Court sooner. The Court concludes that the failure to confirm that the petition had actually been filed before communicating to the Court that Plaintiff McCarthy "had file[d]" the petition was at best grossly negligent, and at worst a deliberate misrepresentation designed avoid the December 2, 2015 show cause hearing. The vague and untimely explanation to the Court about when the petition was actually filed only compounded the problem. In failing to make any attempt to verify the accuracy of his representation to the Court, and in failing to diligently explain the cause of his inaccurate representation, the Court concludes that Attorney McCarthy's conduct fell far below the standard expected of attorneys practicing in the State of North Carolina.

16. Ultimately, the Court concludes that Attorney McCarthy has not only engaged in a course of conduct that does not meet the standard expected of attorneys practicing in North Carolina courts, but that conduct has also delayed this action, caused unnecessary additional expense, and has generally frustrated this Court's efforts to resolve the parties' dispute. Accordingly, after thorough consideration of the background of this matter, Attorney McCarthy's conduct, and other appropriate matters, and in the exercise of its discretion, the Court concludes that Attorney McCarthy's pro hac vice admission in this case should be revoked, and that he should be prohibited from practicing law in the courts of the State of North Carolina for a period of two years.

THEREFORE, IT IS ORDERED that:

17.     J. Andrew McCarthy, Jr., Esq.'s pro hac vice admission in this matter, granted on December 8, 2014, is hereby REVOKED.

18.     J. Andrew McCarthy, Jr., Esq. shall be prohibited from practicing law in the State of North Carolina for a period of two (2) years from the date of this Order.  The Court will provide a copy of this Order to appropriate officials of the North Carolina State Bar.

This the 7th day of January, 2016.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases