TSG Finishing LLC v. Bollinger, 2016 NCBC 65.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 104
MASTER FILE
(related case 15 CVS 2058)

| | |
|---|---|
| TSG FINISHING LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>KEITH BOLLINGER; AMERICAN CUSTOM FINISHING, LLC; VERYL ELSTON; GARY E. HARRIS; and UNICHEM INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **ORDER AND OPINION ON DEFENDANT KEITH BOLLINGER'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

1.  **THIS MATTER** is before the Court upon Defendant Keith Bollinger's ("Bollinger") Motion for Partial Summary Judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure (the "Motion") in the above-captioned consolidated cases. Having considered the Motion, the briefs in support of and in opposition to the Motion, the appropriate evidence of record, and the arguments of counsel at a hearing in this matter on July 13, 2016, the Court hereby **DENIES** the Motion.

> *Law Offices of Matthew K. Rogers, by Matthew K. Rogers, for Plaintiff TSG Finishing LLC.*

> *Patrick, Harper & Dixon, LLP, by Michael P. Thomas and Joshua R. Adams, for Defendant Keith Bollinger.*

Robinson, Judge.

# I.    INTRODUCTION

2.    These consolidated lawsuits arise out of an employment dispute, initially between Plaintiff TSG Finishing LLC ("TSG"), a commercial fabric finishing company, and Bollinger, TSG's former Quality Control Manager. TSG alleges that Bollinger breached an employment agreement containing noncompetition and nondisclosure covenants and misappropriated TSG's trade secrets.

3.    The Motion seeks dismissal of TSG's claims for Bollinger's alleged breach of his employment agreement, which was originally entered into with TSG, Incorporated ("TSG Inc."), TSG's parent company. Bollinger argues that TSG Inc.'s transfer of its assets to TSG during TSG Inc.'s bankruptcy in 2011 did not successfully assign the right to enforce the restrictive covenants contained in the employment agreement because the agreement did not contain an express clause permitting assignment. According to Bollinger, such a clause was required under applicable Pennsylvania law to effect the assignment of the restrictive covenants from TSG Inc. to TSG. Because there was no such clause in the employment agreement here, Bollinger argues that TSG was never assigned the right to enforce the restrictive covenants in Bollinger's employment agreement against him.

4.    On December 31, 2014, the North Carolina Court of Appeals reversed this Court's (Murphy, J.) denial of TSG's motion for a preliminary injunction and remanded the case with instructions that this Court enter a preliminary injunction. In doing so, the Court of Appeals, with respect to TSG's breach of contract claims, rejected Judge Murphy's conclusion that the noncompete provision in Bollinger's

employment agreement was unenforceable because the agreement did not contain an express assignability provision. The Court of Appeals specifically concluded that the noncompete was validly assigned to TSG through the bankruptcy reorganization.

5. Nonetheless, Bollinger's Motion seeks to have this Court now reach the opposite conclusion from the Court of Appeals' and hold that TSG's breach of contract claims should be dismissed because the employment agreement was not validly assigned through the bankruptcy reorganization and thus is unenforceable by TSG. The Court concludes, however, that under Pennsylvania law, a specific assignability clause in the employment agreement was not necessary here to permit a valid assignment of the employment agreement. Accordingly, the Court concludes that a genuine issue of fact remains as to whether the restrictive covenants in Bollinger's employment agreement were enforceable by TSG, and that Bollinger's Motion should therefore be denied, at least at this stage of the proceedings.

## II. PROCEDURAL HISTORY

6. TSG filed its original Complaint on January 16, 2014. The only defendant in the original lawsuit was Bollinger. The case was designated as a complex business case on January 17, 2014, and assigned to the Honorable Calvin E. Murphy on January 22, 2014. The case was reassigned to the Honorable Louis A. Bledsoe, III by order dated July 2, 2014, and later reassigned to the undersigned by order dated July 5, 2016.

7. On January 28, 2014, TSG filed its motion for preliminary injunction, seeking to enjoin Bollinger from allegedly breaching the noncompete provision in his

employment agreement by working for a direct competitor, and from disclosing TSG's trade secrets. On February 20, 2014, Judge Murphy entered an order denying TSG's motion and declining to enter a preliminary injunction.

8. TSG appealed Judge Murphy's February 20, 2014 order and, on December 31, 2014, the Court of Appeals reversed and instructed this Court to enter a preliminary injunction consistent with the Court of Appeals' opinion. Bollinger thereafter filed a petition for discretionary review in the North Carolina Supreme Court, which was denied on August 20, 2015.

9. On August 21, 2015, TSG filed a second lawsuit against American Custom Finishing, LLC ("ACF"), the employer for whom Bollinger went to work when he left TSG, as well as ACF's member and manager, Gary E. Harris, and another member of ACF, Veryl Elston. On November 20, 2015, all parties filed a joint motion to consolidate, seeking to have both related actions consolidated for all further proceedings. Thereafter, on November 24, 2015, the Court (Bledsoe, J.) consolidated both actions and ordered TSG to file an amended consolidated complaint.

10. On December 14, 2015, Judge Bledsoe entered a Preliminary Injunction Order in accordance with the Court of Appeals' instructions. The Preliminary Injunction Order enjoined Bollinger from misappropriating TSG's trade secrets or any proprietary or other confidential information of TSG. Judge Bledsoe declined, however, to enjoin Bollinger from working for ACF or in the textile finishing industry generally because Judge Bledsoe found that the restrictions in the noncompete had expired by their own terms by the date the Preliminary Injunction Order was entered.

11. On December 24, 2015, TSG filed the current operative complaint, titled its Consolidated and First Amended Complaint (the "Amended Complaint"), which asserts, in relevant part, a claim against Bollinger for breach of the employment agreement.

12. Bollinger filed the Motion on April 13, 2016. The parties completed briefing, and the Court held a hearing on the Motion on July 13, 2016. The Motion is now ripe for resolution.

## III. FACTUAL BACKGROUND

13. The Court does not make findings of fact on a motion for summary judgment, but provides the following summary of the material facts, as viewed in the light most favorable to TSG, in order to provide context for the Motion and the Court's ruling thereon. *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 165 (1975).

14. TSG is a Pennsylvania limited liability company that was organized on April 14, 2011 and has a principal office in Hickory, North Carolina. TSG is one of the largest commercial fabric finishers in the country.

15. Bollinger is a resident of Conover, North Carolina and was a former Quality Control Manager for TSG at its Hickory location. As Quality Control Manager, he was responsible for assessing a customer's finishing needs and developing a finishing protocol for that customer.

16. Bollinger initially began working in the fabric finishing field for Geltman Corporation ("Geltman") in 1986. Bollinger became an employee of TSG Inc. when

TSG Inc. acquired Geltman in 1992. He was promoted to Quality Control Manager for TSG Inc. in the late 1990s and served in that role until 2011.

17. In 2007, TSG Inc. required its employees to sign an employment agreement that included nondisclosure and noncompetition covenants, in exchange for receiving their year-end bonus or any raise for the following year.

18. Bollinger signed an Employment Agreement Relating to Confidential Business Information, Trade Secrets and Noncompetition (the "Employment Agreement") on January 14, 2008 in exchange for an annual increase in compensation of $1,300.00 and a $3,500.00 signing bonus. (*See* Am. Compl. Ex. B, hereinafter, "Empl. Agmt.".)

19. Bollinger's Employment Agreement contained restrictive covenants, including a nondisclosure provision prohibiting Bollinger from disclosing TSG's confidential and trade secret information, (Empl. Agmt. § 2), and a noncompetition provision prohibiting Bollinger from engaging in employment in textile finishing within a certain prohibited territory for a period of two years following the termination of Bollinger's employment, (Empl. Agmt. § 3).

20. TSG Inc. filed for bankruptcy in 2009. Pursuant to a plan of reorganization approved on April 19, 2011 by the United States Bankruptcy Court for the Eastern District of Pennsylvania, TSG Inc. transferred its assets to TSG, a wholly-owned operating subsidiary of TSG Inc., which remained in operation. Accordingly, Bollinger's employment with TSG Inc. ceased, and he became employed by TSG. Bollinger did not sign a new employment agreement with TSG. According to

Bollinger, every aspect of his day-to-day job remained the same after the bankruptcy reorganization.

21.    Bollinger eventually grew frustrated with a lack of promised financial success.  In 2013, Defendant Veryl Elston, a principal of ACF, with whom Bollinger worked at Geltman, approached Bollinger about a potential position with ACF in North Carolina.  On November 13, 2013, ACF offered Bollinger the position of Operations Manager.

22.    On November 21, 2013, Bollinger informed TSG that he would be resigning, effective December 6, 2013, to take the offered position at ACF at a plant five miles away from TSG's Hickory location.  TSG initially accepted Bollinger's notice, but subsequently directed that he be terminated immediately and escorted from TSG's premises.

23.    Bollinger thus began work for ACF on November 25, 2013.  He worked for ACF until early January 2015, shortly after the Court of Appeals instructed this Court to enjoin Bollinger from working for ACF.

## IV.    ANALYSIS

24.    To prevail on a motion for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure, "the moving party must show that, viewed in the light most favorable to the nonmovant, no genuine issue exists 'as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 784 S.E.2d 457, 460 (N.C. 2016) (internal citation omitted) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)).

25. The Motion seeks dismissal of "any and all claims against [Bollinger] which are based on the [Employment Agreement]." (Def.'s Mot. Partial Summ. J. 1.) Bollinger asserts that the Employment Agreement is not an enforceable contract between TSG and Bollinger, and that he is therefore entitled to judgment as a matter of law on any claims based on the Employment Agreement.

26. Due to a choice of law provision in the Employment Agreement, Pennsylvania law governs enforcement of the Agreement. (*See* Empl. Agmt. § 7); *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) ("[W]here parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.").

27. "[A] restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets." *Hess v. Gebhard & Co.*, 808 A.2d 912, 922 (Pa. 2002). In explaining its rationale for this holding, the Pennsylvania Supreme Court in *Hess* stressed that employment agreements are "personal to the performance of both the employer and employee" and that the "personal characteristics of the employment contract permeate the entire transaction." *Id.* "The fact that an individual may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his employment for the benefit of a stranger to the original undertaking." *Id.* Moreover, "covenants should be construed narrowly and . . . courts

should hesitate 'to read [an assignability provision] into the contract.'" *Id.* (quoting *All-Pak, Inc. v. Johnston*, 694 A.2d 347, 351 (Pa. Super. Ct. 1997)).

28. Another line of cases under Pennsylvania law holds, however, that "a stock sale, unlike a sale of assets, does not alter the corporate entity" and that, accordingly, "the transfer of . . . stock of a corporation has no effect on its ability to enforce a non-compete agreement." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 423 (3d Cir. 2010) (applying Pennsylvania law). Therefore, in the case of a stock sale, as opposed to an asset purchase, there is no need for a specific assignability clause in an employment agreement to allow the acquirer of stock to enforce restrictive covenants in that agreement because there is no change in the identity of the employer. *Id.*

29. Here, both Bollinger and TSG agree that the transaction that occurred during the bankruptcy reorganization was a transfer of assets, rather than a stock sale. Bollinger therefore argues that, because there is no express assignability clause in the Employment Agreement, the Employment Agreement was not validly assigned, and the restrictive covenants therein were unenforceable by TSG.

30. Bollinger raised the same argument in TSG's appeal of Judge Murphy's order, and the Court of Appeals rejected it, concluding:

> The situation in this case is not one where [TSG] was a 'stranger to the original undertaking.' Unlike the sale of assets between two companies at arms' length, like the transaction that took place in *Hess*, the assignment in this case took place in the context of a bankruptcy reorganization, where the same company policies and management were retained. [TSG] is a wholly owned subsidiary of [TSG Inc.], with whom [Bollinger] entered into the non-compete. As [TSG's CEO Jack Rosenstein ("Rosenstein")] testified at the hearing, '[i]t's not a new entity. . . . it's basically the same company it was.' According to [Bollinger], every aspect of his job remained unchanged after the

assignment. Therefore, the facts here are more analogous to those cases where Pennsylvania courts have declined to make assignability provisions a requirement, such as with a stock sale or merger, because the contract rights are not given to a completely new entity. *See J.C. Ehrlich Co., Inc. v. Martin*, 2009 PA Super 127, 979 A.2d 862, 865–66 (Pa. 2009) (holding that where an employee's obligations and duties did not change in any material way after a stock purchase, a non-compete agreement was enforceable by the company with whom the agreement was made without an explicit assignability clause). Accordingly, we reject the trial court's conclusion that the non-compete is unenforceable because it did not contain a specific assignability provision.

*TSG Finishing, LLC v. Bollinger*, 767 S.E.2d 870, 879 (N.C. Ct. App. 2014).

31. Bollinger argues that the Court of Appeals' decision in this regard was incorrect. He contends that the Court of Appeals misinterpreted *Hess* and *J.C. Ehrlich* and argues that these cases do not turn on whether there is any material change to the terms and conditions of employment or the identity of the employee's individual supervisors and coworkers, but on the formal legal structure of the transaction at issue. Thus, according to Bollinger, because TSG is not the same legal entity that entered into the Employment Agreement with Bollinger, Pennsylvania law makes clear that TSG cannot enforce the restrictive covenants therein without a specific assignability clause.

32. First, the Court must determine whether the Court of Appeals' holding is now the law of the case in this proceeding, such that the Court is required to follow the holding without variation. *See Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 667, 554 S.E.2d 356, 363 (2001) ("On the remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure.") (citations omitted). Bollinger argues

that this Court is not so required because the Court of Appeals' conclusion was made at the preliminary injunction stage, and such a conclusion is not binding in subsequent proceedings. *See DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 578, 561 S.E.2d 276, 282 (2002) ("[T]he findings of fact and other proceedings of the trial court which hears the application for a preliminary injunction are not binding at a trial on the merits. The same is true of our decision upon this appeal and our statement of the facts upon which our conclusion rests.") (internal citation omitted).

33. The Court is not convinced that it is free to disregard the Court of Appeals' explicit legal conclusion in these circumstances, where the relevant record evidence currently before the Court has not materially changed from that considered by the Court of Appeals at the preliminary injunction stage. Nonetheless, it is unnecessary to decide that issue because, as will be explained, the Court believes that the Court of Appeals reached the correct result.

34. It is true that whether an express assignability clause is required to permit assignment of restrictive covenants in an employment agreement has generally turned on whether such assignment occurred in the context of an asset acquisition on the one hand, or a merger or stock sale on the other. However, the Court concludes that it is not the mere legal structure of the transaction at issue that is relevant under Pennsylvania law, but rather the changes, or lack thereof, in the nature of the employment relationship that are typical in each transaction.

35. For example, in concluding that an assignability clause was necessary to effect valid assignment in the context of an asset sale, the *Hess* court stressed that

its conclusion was based on the "personal characteristics of the employment contract" and the fact that, when the identity of the employer changes, the nature of the employment relationship typically changes, such that the employee is forced to "suffer a restraint on his employment for the benefit of a stranger to the original undertaking." *Hess*, 808 A.2d at 922. The court specifically found significant the fact that the purported assignment of the employment agreement there constituted a material change in the defendant-employee's employment obligations. *Id.*

36. Similarly, in *J.C. Ehrlich*, in concluding that an assignability clause was not necessary to effect valid assignment in the context of a stock purchase, the court stressed the fact that the defendant's "obligations and duties [did not] change[] in any material respect" after the stock purchase. *J.C. Ehrlich*, 979 A.2d at 866.

37. This case law points to the conclusion that, under Pennsylvania law, a restrictive covenant contained in an employment agreement is not assignable to a successor business entity, in the absence of a specific assignability provision, where the employee would be forced to suffer a restraint on his employment for the benefit of a stranger to the original agreement. Where the successor entity is essentially the same, however, such that the nature of the employment relationship does not change following the transaction, a specific assignability provision is not required to effectuate assignment of a restrictive covenant, regardless of the transaction's formal legal structure.

38. Here, TSG is "basically the same company" as TSG Inc.; the owners and officers of TSG did not change, and Bollinger himself testified that every aspect of his

job remained unchanged after the bankruptcy reorganization. As the Court of Appeals pointed out, this is not a case where TSG was a stranger to the Employment Agreement originally entered into between TSG Inc. and Bollinger. Rather, as is typically the case in a stock sale, TSG, as a result of the bankruptcy reorganization, is essentially the same entity as the original party to the Employment Agreement. The Court does not believe that Pennsylvania law requires an explicit assignability provision in the circumstances presented here.

39. Accordingly, the Court rejects Bollinger's argument that the Employment Agreement is unenforceable because it did not contain a specific assignability clause, and concludes that the Employment Agreement was assignable without such a clause. Nonetheless, Bollinger argues, albeit briefly, that TSG has presented no evidence that the Employment Agreement was actually assigned to it by TSG Inc. The Court disagrees.

40. Indeed, the Court of Appeals noted in its decision that Rosenstein specifically testified that the Employment Agreement, and the restrictive covenants contained therein, were assigned by TSG Inc. to TSG. Moreover, the Bankruptcy Court's order approving TSG Inc.'s bankruptcy plan specifically approved assumption by TSG of all of TSG Inc.'s executory contracts. The Court concludes that such evidence at least presents a genuine issue of fact as to assignment that is improper to resolve at the summary judgment stage.

41. Because Bollinger asserts no other basis for concluding that the Employment Agreement was unenforceable by TSG, the Court concludes that

judgment as a matter of law in Bollinger's favor is inappropriate on this record, and that the Motion should be denied.

## V.    CONCLUSION

42.    For the foregoing reasons, the Court hereby **DENIES** Bollinger's Motion for Partial Summary Judgment.

**SO ORDERED**, this the 26th day of August, 2016.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases