DAYLENE PAGE, ELSIE CLAY, ADA FARRAR AND JAMES LASTER, ON BEHALF OF THEMSELVES AND ALL PERSONS SIMILARLY SITUATED IN THE COMMUNITY OF FEL-TONSVILLE, WAKE COUNTY, NORTH CAROLINA, PLAINTIFFS V. ROSCOE, LLC, A LIMITED LIABILITY COMPANY, DALE C. BONE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND THE TOWN OF APEX, DEFENDANTS

No. COA97-286

(Filed 3 March 1998)

**1. Pleadings § 63 (NCI4th)— Rule 11 sanctions—reasonable inquiry into facts and law—sanctions reversed**

The portion of an order imposing Rule 11 sanctions on plaintiffs and plaintiffs' attorney as to defendant Roscoe was reversed where plaintiffs' complaint, supported by an affidavit, contained sufficient allegations susceptible of proof that defendant's gas storage facility will result in an anticipated nuisance when it becomes operational. Plaintiffs' attorney made an objectively reasonable inquiry into the facts and existing law by obtaining an expert opinion which supports plaintiffs' allegations and in his reliance on a North Carolina Supreme Court opinion.

**2. Pleadings § 63 (NCI4th)— Rule 11 sanctions—improper purpose—no evidence**

There was no violation of the improper purpose prong of Rule 11 where there was no evidence that plaintiffs filed their complaint for any improper purpose and the trial court did not make any findings in this regard, but merely concluded that such an improper purpose existed.

**3. Pleadings § 63 (NCI4th)— Rule 11 sanctions—action against individual member of limited liability company—not well grounded in law**

The portion of an order imposing Rule 11 sanctions on plaintiffs and their attorney as to defendant Bone was remanded for further consideration of appropriate sanctions where no acts by Bone individually were properly alleged. Under N.C.G.S. § 57C-3-30, it was improper to name an individual member of a limited liability company as a party defendant without any evidence to support it and the naming of Bone was not well grounded in law. Defendant's counsel conceded at oral argument that naming Bone as an individual defendant did not require additional time and research beyond that required to assert defenses and other arguments on

behalf of Roscoe and the matter was remanded for determination of what sanctions, if any, are appropriate.

Appeal by plaintiffs from order entered 30 September 1996 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 19 November 1997.

*Conrad A. Airall for plaintiffs-appellants.*

*Narron, Holdford, Babb, Harrison & Rhodes, P.A., by I. Joe Ivey and Henry C. Babb, Jr., for defendants-appellees Roscoe, LLC and Dale C. Bone.*

WALKER, Judge.

On 12 August 1994, defendant Roscoe, LLC (Roscoe) purchased approximately two acres of land in the Community of Feltonsville near the Town of Apex (the Town). On 3 January 1995, the Town approved a site plan submitted by Roscoe for the construction and operation of a propane gas bulk storage and distribution facility, which is a permitted use under the zoning ordinance. Thereafter, grading and site preparation was begun. This two acres of land was re-zoned from Residential-Agricultural to Industrial-2 in 1987 as part of the Town's Comprehensive Land Use Plan even though the surrounding properties were zoned residential-agricultural at the time.

On 11 April 1995, plaintiffs filed a complaint against defendants Roscoe and Dale C. Bone (Bone), a member of Roscoe, alleging that a gas storage facility, if constructed, would constitute a nuisance. Plaintiffs allege the gas storage facility will be located in close proximity to their homes and would be located within 100 feet of plaintiff Daylene Page's home. Plaintiffs further alleged that the defendant Town of Apex engaged in racial discrimination by refusing to consider the objections of the plaintiffs. This complaint was signed by plaintiffs' attorney, Conrad Airall and verified by plaintiffs Daylene Page, Elsie Clay, Ada Farrar and James Laster. Plaintiffs subsequent application for a temporary restraining order (TRO) to enjoin the Town from issuing a building permit was denied. Plaintiffs then sought a preliminary injunction which was denied on 5 May 1995.

Plaintiffs dismissed with prejudice all claims after reaching a settlement with the Town on 8 August 1995. Plaintiffs later dismissed all claims against Roscoe and Bone on 19 December 1995. Subsequently, on 9 April 1996, Roscoe and Bone moved for Rule 11 sanctions includ-

ing attorney's fees. On 30 September 1996, the trial court imposed Rule 11 sanctions against plaintiffs and plaintiffs' counsel, ordering them to pay attorney's fees in the amount of $13,065 and costs of $98.50.

[1] Plaintiffs first argue that the trial court erred in finding that the complaint filed against Roscoe and Bone was not well grounded in fact or law and was filed for the improper purpose of hindering, delaying and preventing the operation of a lawful business enterprise in violation of Rule 11.

N.C. Gen. Stat. § 1A-1, Rule 11 (1990) provides in part:

(a) *Signing by Attorney.-* Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

"This Court exercises de novo review of the question of whether to impose Rule 11 sanctions. If we determine that the sanctions were warranted, we must review the actual sanctions imposed under an abuse of discretion standard." *Dodd v. Steele*, 114 N.C. App. 632, 635,

442 S.E.2d 363, 365, *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994) (citations omitted).

The Rule 11 analysis contains three parts: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose. "A violation of any one of these requirements mandates the imposition of sanctions." *Id.*

"To satisfy the legal sufficiency requirement, the disputed action must be warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Id.* The two-step analysis required in determining legal sufficiency is as follows:

[T]he court must first determine the facial plausibility of the paper. If the paper is facially plausible, then the inquiry is complete, and sanctions are not proper. If the paper is not facially plausible, then the second issue is (1) whether the alleged offender undertook a reasonable inquiry into the law, and (2) whether, based on the results of the inquiry, formed a reasonable belief that the paper was warranted by existing law, judged as of the time the paper was signed. If the court answers either prong of this second issue negatively, then Rule 11 sanctions are appropriate.

*McClerin v. R-M Industries, Inc.* 118 N.C. App. 640, 643-44, 456, S.E.2d 352, 355 (1995). Our Supreme Court has interpreted "reasonable inquiry" to mean the following:

i[f], given the knowledge and information which can be imputed to a party, a reasonable person under the same or similar circumstances would have terminated his or her inquiry and formed the belief that the claim was warranted under existing law, then the party's inquiry will be deemed objectively reasonable.

*Jerry Bayne, Inc. v. Skyland Industries, Inc.*, 108 N.C. App. 209, 214, 423 S.E.2d 521, 523 (1992), *affirmed*, 333 N.C. 783, 430 S.E.2d 266 (1993) (*quoting Bryson v. Sullivan*, 330 N.C. 644, 661-62, 412 S.E.2d 327, 336 (1992)). Moreover, "the reasonableness of the belief that it [the document] is warranted by existing law should be judged as of the time the document was signed." *Id.* at 215, 423 S.E.2d at 524. Responsive pleadings are not to be considered. *Bryson*, 330 N.C. at 656, 412 S.E.2d at 333.

Further, when analyzing the factual sufficiency of a complaint, the court must determine the following:

(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of

his inquiry, reasonably believed that his position was well grounded in fact.

*McClerin,* 118 N.C. App. at 644, 456 S.E.2d at 355 (*citing Higgins v. Patton,* 102 N.C. App. 301, 306, 401 S.E.2d 854, 857 (1991). *See also Brown v. Hurley,* 124 N.C. App. 377, 477 S.E.2d 234 (1996).

Prior to filing their complaint, plaintiffs obtained an affidavit from Kenneth O. Beatty, Jr., Ph.D., P.E., a chemical engineer, stating the dangers of a gas storage facility, particularly when located in close proximity to a residential area. Beatty's affidavit included the following:

13. In a distribution facility where thousands of gallons are transferred each day from one storage vessel to another, there always exists the possibility of a serious spill of liquid.

14. Dangers associated with handling liquid propane are reported in literature with which I am familiar. The literature warns of the possibility of rupture of storage cylinders in the event of back-flow in transfer piping between one vessel and another. Due to the constant pressure under which the gas must be kept to keep it in liquid form, back-flow prevention devices must be installed and operating properly to protect cylinders from such rupture and potential explosion. Such devices may be reliable but can fail like any other piece of mechanical equipment.

. . .

16. Based on my expertise as a chemical engineer, my direct knowledge of propane explosion results, and my knowledge of the literature on the subject, it is my opinion that the potential hazard to the surrounding areas of a facility such as the one proposed is so great that a propane distribution plant should not be located in the near vicinity of a residential area.

Plaintiffs' complaint included the following allegations:

37. Plaintiffs believe and thus allege that locating the propane storage facility in such close proximity to Plaintiffs' homes poses a substantial hazard to the health and safety of all residents of the Community.

. . .

41. The 30,000 gallon liquid propane storage facility erected in the residential area of the Community will pose a severe threat to the

health and safety of the occupants of Plaintiff Daylene Page's property and to the health and safety of the Feltonsville Community in general.

42. Plaintiffs believe and thus allege that the permanent storage facility will be located within less than 100 feet of Plaintiff Daylene Page's house . . . and will be [located] within less than one mile of the homes in the residential area of the Community.

43. Plaintiffs believe and thus allege that the actions of defendants Roscoe and Bone in preparing the two-acre parcel for the placement of Liquid propane thereon, and the actual erection of the said facility have interfered, and will continue to interfere with Plaintiffs' use and enjoyment of their property constituting a private nuisance by Defendant Roscoe and Bone. By virtue of this nuisance Plaintiff Daylene Page and all other Plaintiffs residing in close proximity to the facility will suffer various types of illnesses associated with ingesting propane and other chemical compounds; and will be exposed to the risk of fire and explosion.

. . .

59. In order to fully compensate Plaintiffs, in order to prevent future harm from the likely or possible spread of chemical contaminants, noxious gases, diesel exhaust emissions, and explosion and fire, and in order to protect the public, including Plaintiffs and the residents of the Community f[rom] the potential harms to human health and the environment resulting from the presence of the storage facility and otherwise in the interest of equity, public policy, and justice, plaintiffs are entitled to injunctive relief enjoining Defendants from erecting the liquid propane storage facility on the two-acre parcel.

The trial court found that "the legality of the Industrial-2 zoning had previously been litigated by the Plaintiffs . . . [and] that the LP gas bulk storage facility was a permitted use under the zoning ordinance and Land Use Plan for the City of Apex." Plaintiffs objected to the re-zoning of the property to I-2 in 1987. While it is correct that they did not "appeal" from the re-zoning action by the Town, there is nothing in the record to suggest that a gas storage facility would be located on the property. In fact, defendant Roscoe did not acquire the property until 1994.

The defendants argue that there is no precedent in this State which would support a cause of action based on nuisance per acci-

dens as to the proposed development of an otherwise lawful business operation.

The trial court, obviously persuaded by this argument, made the following finding:

> the allegations of .. . . the Complaint stating that the named Defendants committed a private nuisance as of April 11, 1995, entitling Plaintiffs to recover substantial damages from the Defendants is based upon conjecture and speculation since a lawful business can only constitute a private nuisance per accidens if it is <u>operated</u> in an unlawful manner and otherwise interferes with the use and enjoyment of the Plaintiff's property.

However, plaintiffs cite *Hooks v. International Speedways, Inc.*, 263 N.C. 686, 140 S.E.2d 387 (1965), where our Supreme Court stated the following principle of law with respect to an anticipated nuisance:

> It is well settled that a court of equity may, under proper circumstances, enjoin a threatened or anticipated nuisance. Courts are reluctant to interfere by injunction in a legitimate business enterprise. Where the thing complained of is not a nuisance per se, but may or may not become a nuisance, according to the circumstances, and the injury apprehended is merely eventual or contingent, equity will not interfere. 'Where it is sought to enjoin an anticipated nuisance, it must be shown (a) that the proposed construction or the use to be made of the property will be a nuisance per se; (b) or that, while it may not amount to a nuisance per se, under the circumstances of the case a nuisance must necessarily result from the contemplated act or thing. . . . The injury must be actually threatened, not merely anticipated; it must be practically certain, not merely probable. . . . The mere apprehension of a nuisance is insufficient to warrant equitable relief, and in order to restrain future acts with respect to the use of a proposed building, it is necessary to set forth facts which show with reasonable certainty that such result would likely follow.

*Hooks*, 263 N.C. at 690-91, 140 S.E.2d at 391 (citations omitted).

In *Hooks*, the plaintiffs (officers and trustees of Smyrna Baptist Church), after receiving a restraining order, sought to permanently enjoin defendant's construction and operation of an automobile race track which would be located 2,500 feet from their rural church. *Hooks*, 263 N.C. at 690, 140 S.E.2d at 390. Plaintiffs alleged that the

**PAGE v. ROSCOE, LLC**

[128 N.C. App. 678 (1998)]

" 'speedway would be used particularly on Sundays . . .; 'operation of a race track as threatened by defendants creates noise which can be heard for miles away;' 'the noise from automobile engines and squealing tires will completely disrupt any service being held at Smyrna Church.' " *Id.* at 693, 140 S.E.2d at 393. Our Supreme Court found that these "allegations of fact [were] susceptible of proof" and were sufficient to uphold the trial court's continuance of the restraining order until the final hearing on the merits. *Id.*

In view of the rule in *Hooks*, the trial court's conclusion that "a lawful business can only constitute a private nuisance per accidens if it is operated in an unlawful manner . . ." is erroneous.

The trial court based its findings and conclusions on the premise that at the time the complaint was filed, defendants were engaged in a lawful business enterprise and had complied with all existing regulations; therefore, its activity could not constitute a nuisance. Here, plaintiffs alleged in their complaint that heavy trucks will be entering and exiting the gas storage facility; the loading and unloading of these trucks will increase the likelihood of gas escaping; the increase in truck traffic will result in loud noise, congestion and vehicular accidents; this facility will pose a hazard to the health and safety of the plaintiffs and therefore interfere with the use and enjoyment of their property; and that plaintiff Daylene Page's house will be within 100 feet of this facility. Plaintiffs argue that even though the defendant's gas storage facility may not constitute a nuisance per se; nevertheless, their allegations are susceptible of proof that a nuisance will otherwise result from its operation.

As to the sufficiency of the allegations, the Court also stated in *Hooks*, "[w]hether plaintiffs will be able to make satisfactory proof at the trial upon the merits, does not concern us here." *Hooks*, 263 N.C. at 693, 140 S.E.2d at 393. Likewise, we are not confronted with determining whether plaintiffs would have been able to prove the gas facility was a nuisance under these circumstances or the fact that plaintiffs' requests for both a TRO and preliminary injunction were denied. We note our inquiry is distinguished from that in *Hooks* where the issue was the sufficiency of allegations in the complaint so as to entitle the plaintiffs to a continuing restraining order until a final hearing on the merits. Instead, we focus on whether the complaint, at the time it was filed, was factually and legally sufficient to withstand Rule 11 sanctions.

After careful review, we find that plaintiffs' complaint, supported by Beatty's affidavit, contains sufficient allegations which are susceptible of proof that defendant's gas storage facility will result in an anticipated nuisance when it becomes operational. As such, we find that plaintiffs made a reasonable inquiry into the facts and determined that their position was well grounded in fact. We further find that plaintiffs undertook a reasonable inquiry into the law and formed a reasonable belief that the complaint was warranted by existing law. It is evident that plaintiffs' attorney made an "objectively reasonable" inquiry into the facts and existing law by the obtaining of Beatty's expert opinion which supports plaintiffs' allegations of an anticipated nuisance and in his reliance on *Hooks*.

[2] Finally, we must determine whether the plaintiffs' complaint was interposed for an improper purpose in violation of Rule 11.

This Court in *Brown v. Hurley*, 124 N.C. App. 377, 382, 477 S.E.2d 234, 238 (1996), stated:

Even if a complaint is well-grounded in fact and in law, it may nonetheless violate the improper purpose prong of Rule 11. An improper purpose is "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." In other words, a party "will be held responsible if his evident purpose is to harass, persecute, otherwise vex his opponents or cause them unnecessary cost or delay." An objective standard is used to determine the existence of an improper purpose, with the burden on the movant to prove such improper purpose.

(Citations omitted).

We find no evidence which would suggest that the plaintiffs here filed their complaint for any improper purpose. Moreover, the trial court did not make any findings in this regard, but merely concluded that such an improper purpose existed. Therefore, we find no violation of the improper purpose prong of Rule 11.

[3] The trial court also found that:

The actions of the Plaintiff and their Attorney of Record in naming the Defendant, Dale C. Bone, as an individual party defendant in this Complaint were contrary to North Carolina law in that N.C.G.S. § 57C-3-30(b) prohibits the naming of a member of a limited liability company as a party to proceedings by or against a limited liability company. Moreover, the Complaint does not

**PAGE v. ROSCOE, LLC**

[128 N.C. App. 678 (1998)]

allege any acts on the part of Dale C. Bone individually, which are not related to his status as a member of a North Carolina limited liability company and would justify the naming of Bone as an individual party Defendant.

The court then concluded that the improper naming of Bone as an individual party defendant "violates Rule 11 of the North Carolina Rules of Civil Procedure in that the allegations are not well founded in fact or law and taken for the improper purpose of hindering, delaying and preventing the operation of a lawful business enterprise by Roscoe, L.L.C."

While we do not find that the allegations were not well-grounded in fact or were taken for an improper purpose, we do find that the allegations against Bone individually are not well-grounded in law.

N.C. Gen. Stat. § 57C-3-30 (1993) provides in pertinent part:

(a) A person who is a member or manager, or both, of a limited liability company is not liable for the obligations of a limited liability company solely by reason of being a member or manager or both, and does not become so by participating, in whatever capacity, in the management or control of the business. A member or manager may, however, become personally liable by reason of his own acts or conduct.

(b) A member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object of the proceeding is to enforce a member's right against or liability to the limited liability company.

The record sustains the trial court's conclusion that no acts by Bone, individually, were properly alleged. Therefore, under the above statute, it was improper to name an individual member of a limited liability company as a party defendant without any evidence to support it. As such, the naming of Bone as an individual defendant was not well-grounded in law and therefore a violation of Rule 11. Even though defendant's counsel conceded at oral argument that the naming of Bone as an individual defendant did not require additional time and research beyond what was required to assert defenses and other legal arguments on behalf of Roscoe, it is for the trial judge to determine what sanctions, if any, are appropriate here. We remand for consideration by the trial court of an appropriate sanction based on the record or further evidence.

In summary, we conclude that the plaintiffs' complaint, as against defendant Roscoe, did not violate either the factual sufficiency, legal sufficiency or the improper purpose prongs of Rule 11. The portion of the order of the trial court imposing Rule 11 sanctions on plaintiffs and plaintiffs' attorney, jointly and severally, as to defendant Roscoe, is reversed. The portion of that order imposing sanctions on plaintiffs and plaintiffs' attorney, jointly and severally, as to defendant Bone, is remanded for further consideration consistent with this opinion.

Reversed in part and remanded.

Chief Judge ARNOLD and Judge LEWIS concur.