**In re David Henry ROGERS, Debtor.**

**Robert W. Bryant, Jr. and Lucas, Bryant & Denning, P.A., Plaintiffs,**

v.

**David Henry Rogers, Defendant.**

**Bankruptcy No. 98–02439–5–ATS.
Adversary No. S–99–00003–5–AP.**

United States Bankruptcy Court,
E.D. North Carolina,
Raleigh Division.

Sept. 22, 1999.

Gordon C. Woodruff, Smithfield, NC, for plaintiffs.

William E. Brewer, Raleigh, NC, for defendant/debtor.

## MEMORANDUM OPINION

A. THOMAS SMALL, Chief Judge.

The trial of this adversary proceeding to determine, pursuant to 11 U.S.C. § 523(a)(6), the dischargeability of Rule 11 sanctions imposed in a state court proceeding against an attorney, the chapter 7 debtor/defendant, David Rogers, was held in Raleigh, North Carolina on July 28, 1999 and September 14, 1999.[1]

### JURISDICTION

This court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I) which this court may hear and determine.

### FACTS

Prior to filing his chapter 7 bankruptcy petition on October 26, 1998, Mr. Rogers represented Ether Ingram ("Mrs. Ingram") in litigation in the General Court of Justice, District Court Division for Johnston County, North Carolina (*Lucas, Bryant & Denning, P.A. v. Ether Ingram*, 95 CVD 00823) against the law firm of Lucas, Bryant, & Denning, P.A. and Robert W. Bryant, Jr. (both shall be referred to as "Bryant") that resulted in sanctions of $10,000 against Mr. Rogers pursuant to

---

1. Without explanation the defendant, David Rogers, did not appear at the trial on July 28, 1999. The next day, defendant's counsel arranged a telephone conference with the court and counsel for the plaintiff to discuss the defendant's request that the trial be re-opened to permit Mr. Rogers to testify. Apparently, Mr. Rogers was representing a client in a trial in Pamlico County, North Carolina and was unable to attend the trial of his own adversary proceeding. Although this request should have been made before the trial, the court, nevertheless, agreed to re-open the trial, and Mr. Rogers testified on September 14, 1999. After reviewing the entire record, it is the court's opinion that the outcome of the proceeding would have been the same even in the absence of Mr. Roger's testimony.

North Carolina General Statute § 1A-1, Rule 11. Bryant contends that Mr. Rogers' actions that culminated in the imposition of sanctions were willful and malicious and that the sanctions are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Mr. Bryant is an attorney in Johnston County, North Carolina who represented Mrs. Ingram in a domestic relations dispute against her husband (*Ingram v. Ingram*, 94–CVD–1860). Mrs. Ingram owed Bryant $2,361.72 for that representation, and a suit to collect the debt from Mrs. Ingram was brought by the law firm in the District Court for Johnston County (*Lucas, Bryant & Denning, P.A. v. Ether Ingram*, 95 CVD 00823).

According to Mr. Rogers, Mrs. Ingram thought that she had not been properly represented by Mr. Bryant, and she wanted to sue Mr. Bryant for malpractice. She was unable to find a lawyer in Johnston County willing to bring the suit and contacted the North Carolina State Bar for a referral. At the suggestion of the Bar, Mrs. Ingram contacted Lloyd Kelso, the author of a treatise on North Carolina family law, who recommended Mr. Rogers.

Mrs. Ingram and Mr. Rogers met to discuss the representation, and Mr. Rogers agreed to take the case. Mr. Rogers maintains that he agreed to accept the representation before learning that Mrs. Ingram was the defendant in the action brought by Bryant to collect attorney's fees. Mr. Rogers believed that the malpractice cause of action had to be brought as a compulsory counterclaim in the collection litigation, *Lucas, Bryant & Denning, P.A. v. Ether Ingram*, and he filed a counter claim on behalf of Mrs. Ingram against the law firm and added Mr. Bryant as a third-party defendant.

The thrust of the malpractice claim was that Mr. Bryant failed to ask the court to award Mrs. Ingram alimony pendente lite. Mr. Bryant contends that Mrs. Ingram was not entitled to alimony pendente lite because she would have been unable to prove that she was a dependent spouse.

At the time Mr. Ingram was disabled and could not have provided support. Mr. Rogers represented Mrs. Ingram in the domestic relations case after Mr. Bryant withdrew, and a settlement was reached with Mr. Ingram that did not include the payment of alimony.

Bryant was granted summary judgment both as to the claim against Mrs. Ingram for attorney's fees and as to the defense of the malpractice counterclaim. Mr. Rogers filed an appeal on behalf of Mrs. Ingram to the North Carolina Court of Appeals, and when that was lost, he filed an unsuccessful petition for writ certiorari with the North Carolina Supreme Court.

Bryant asked the District Court for Johnston County to impose sanctions against Mrs. Ingram and Mr. Rogers pursuant to Rule 11 of the North Carolina Rules of Civil Procedure, and just prior to a hearing to consider the request, Mr. Rogers agreed to pay sanctions of $10,000. According to Mr. Rogers, he felt that sanctions were not justified, but agreed to the sanctions to protect Mrs. Ingram by limiting the imposition of sanctions to himself.

The District Court for Johnston County entered a consent judgment imposing sanctions of $10,000 against Mr. Rogers, and when Bryant started to execute on the judgment, Mr. Rogers filed for chapter 7 relief.

Bryant argues that the counterclaim filed by Mr. Rogers had absolutely no merit and was filed to gain leverage against Bryant in the collection suit against Mrs. Ingram. Mr. Rogers contends that he believed that the malpractice claim had merit and that he filed the counterclaim in the collection action because it was a compulsory counterclaim.

The court finds that the malpractice claim did not have merit. The counterclaim was not well grounded in law or fact and Mr. Rogers was reckless in filing the counterclaim and in pursuing the appeal.

Bryant contends that Mr. Rogers' actions were willful and malicious, but the court finds that Mr. Rogers believed that the counterclaim had merit and that while his actions were reckless he did not willfully and maliciously cause an injury to Bryant.[2]

## DISCUSSION AND CONCLUSION

■ 11 U.S.C. § 523(a)(6) provides that a discharge under chapter 7 (§ 727) does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6).

The United States Supreme Court has held in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), "that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 118 S.Ct. at 978. In *Geiger*, a patient who had to have her foot amputated as the result of improper medical treatment recovered a $355,000 malpractice judgment against her uninsured physician, Dr. Geiger. Dr. Geiger subsequently filed for chapter 7 relief, and the patient, Mrs. Kawaauhau, contended that the judgment should be nondischargeable under § 523(a)(6). According Mrs. Kawaauhau, Dr. Geiger's conduct was willful and malicious in that he "deliberately chose less effective treatment because he wanted to cut costs, all the while knowing that he was providing substandard care." *Geiger*, 118 S.Ct. at 976–77.

The United States Supreme Court observed in *Geiger* that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Geiger*, 118 S.Ct. at 977. Although his treatment of Mrs. Kawaauhau's

infected foot may have been negligent or reckless, Dr. Geiger did not intend the injury to Mrs. Kawaauhau, and the court held that the malpractice judgment was not nondischargeable under § 523(a)(6).

The Rogers' case is similar to *Geiger*. Mr. Rogers negligently or recklessly performed professional services for Mrs. Ingram to the detriment of Bryant who was injured to the extent of the time and legal fees expended in the defense of the frivolous malpractice counterclaim. However, as in *Geiger*, the injury was not intended. Mr. Rogers thought that Mrs. Ingram had a meritorious claim and sought to recover from Bryant what he believed the law allowed. It is true that Mr. Rogers intentionally filed the counterclaim, but he thought that the counterclaim was justified and therefore did not intentionally injure Bryant.

■ Bryant argues that the imposition of Rule 11 sanctions is in essence a determination by the state court of willful and malicious conduct. However, willful and malicious conduct is not a prerequisite of sanctions under Rule 11 of the North Carolina Rules of Civil Procedure. N.C.GEN. STAT. § 1A–1, RULE 11 (1986) North Carolina's Rule 11 provides in part:

(a) *Signing by Attorney.*—Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information,

---

2. During closing argument, counsel for Mr. Rogers described his client as being "hardheaded." That is an apt description. It appears to the court that Mr. Rogers' head-strong and stubborn zealous pursuit of Mrs. Ingram's claim clouded his professional judgment.

and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

N.C.Gen.Stat. § 1A–1, Rule 11 (1986).

In North Carolina, Rule 11 sanctions may be imposed without a finding of improper purpose. A violation of either a factual insufficiency, a legal insufficiency, *or* an improper purpose is all that is required. *Page v. Roscoe, LLC,* 128 N.C.App. 678, 497 S.E.2d 422 (1998).

Bryant contends that Mr. Rogers is an officer of the court and that he should not be able to avoid the consequences of his reckless practice of law by filing a chapter 7 bankruptcy petition. Perhaps the rule should be that debts arising from injuries caused by doctors and lawyers who recklessly practice their professions should be nondischargeable. However, that would require an amendment to § 523(a), and until that occurs, this court must apply the statute as written by Congress and interpreted by the United States Supreme Court.

Accordingly, the court concludes that the Bryant judgment is not nondischarge-able, and an appropriate judgment will be entered.