Se. Air Charter, Inc. v. Stroud, 2015 NCBC 66.

STATE OF NORTH CAROLINA

COUNTY OF LEE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 946

SOUTHEAST AIR CHARTER, INC., )
)
Plaintiff, )
)
v. )
)
ROBERT BARRY STROUD, and wife, )
JENNIFER STROUD, UTILITY )
HELICOPTERS, LLC, )
RENAISSANCE JET, LLC, RUSSELL )
VIALL, KAREN LEE ROBINSON and )
DONNIE LAUDERDALE, )
)
Defendants. )
)

ORDER

{1}     THIS MATTER is before the Court on Defendants Russell Viall, Karen Lee Robinson and Kathleen Steiner-Crowley's Motion for Attorney's Fees and Costs, made pursuant to Rules 11 and 41 of the North Carolina Rules of Civil Procedure ("Rule(s)") and sections 6-20, 6-21.5, 7A-305, and 75-16.1 of the North Carolina General Statutes ("Motion for Sanctions") and Defendants Viall, Robinson & Steiner-Crowley's Motion to Strike Affidavit of Gary Joseph Chandler and Request for Oral Argument ("Motion to Strike").  For the reasons stated below, the Motion to Strike is DENIED and the Motion for Sanctions is DENIED in part and GRANTED in part, subject to further documentation.

*Yarborough, Winters & Neville, P.A. by J. Thomas Neville for Plaintiff.*

*Van Camp, Meacham & Newman, PLLC by Thomas Van Camp and Richard Lee Yelverton, III for Defendants Russell Viall, Kathleen Steiner-Crowley, and Karen Lee Robinson.*

Gale, Chief Judge.

# I.    STATEMENT OF THE CASE

{2}    Plaintiff Southeast Air Charter, Inc. ("SEAC") initiated this action on September 22, 2011, bringing claims against Defendants Robert Barry Stroud ("Stroud"), Jennifer Stroud, Utility Helicopters, LLC ("Utility Helicopters"), Renaissance Jet, LLC ("Renaissance Jet"), Russell Viall ("Viall"), Karen Lee Robinson ("Robinson"), Kathleen Steiner-Crowley ("Steiner-Crowley"), Donnie Lauderdale ("Lauderdale"), Luxury Butler, LLC ("Luxury Butler"), Christopher David Frushone ("Frushone"), and Scott Moore ("Moore").  For purposes of these motions, the relevant claims from the original Complaint are those against Viall, Robinson, and Steiner-Crowley (collectively, "the Moving Defendants"), which are (1) breach of fiduciary duty (2) constructive fraud, (3) conversion, (4) trespass to personalty, (5) unjust enrichment, (6) unfair and deceptive trade practices ("UDTP"), (7) fraud, (8) tortious interference with contract, (9) tortious interference with prospective contract, (10) conspiracy to commit fraud, (11) unauthorized appropriation for invasion of privacy, (12) piercing the corporate veil, and (13) punitive damages.  Plaintiff alleges an additional claim for reverse piercing the corporate veil against only Viall and Robinson.

{3}    The case was designated as a mandatory complex business case on October 31, 2011 and assigned to the undersigned on November 1, 2011.

{4}    Plaintiff filed its Amended Complaint on January 30, 2012, adding Raleigh Heliport, LLC ("Raleigh Heliport") as a Defendant and alleging two additional conspiracy claims against, *inter alia*, the Moving Defendants.  More specifically, Plaintiff alleged that the Moving Defendants and others conspired:

> (a) to breach Defendants [sic] fiduciary duty owed to Plaintiff; (b) to commit constructive fraud; (c) to convert property of the Plaintiff; (d) to commit trespass to personalty of the Plaintiff; (e) to be unjustly enriched by the Plaintiff; (f) to commit unfair and deceptive trade practices; (g) to commit fraud; (h) to tortiously interfere with contracts of the Plaintiff; (i) to tortiously interfere with prospective contracts of the Plaintiff; and/or (j) to commit unauthorized appropriation of the Plaintiff's name/likeness in furtherance of the overall conspiracy.

(Am. Compl. ¶ 321; *see also* Am. Compl. ¶¶ 287, 326.)

{5}     During the course of the lawsuit and before the final dismissal of all claims, Plaintiff dismissed all claims against Scott Moore, Luxury Butler, Frushone, Raleigh Heliport, and Lauderdale.

{6}     The Moving Defendants' counsel asserts that he repeatedly requested that claims against his clients be dismissed for lack of a factual basis and made his clients available for interview regarding any inquiry Plaintiff needed to make to confirm that the claims against them had no merit. (Van Camp. Aff. ¶¶ 3, 4, 6.)

{7}     On September 10, 2013, Plaintiff dismissed all claims alleged against Steiner-Crowley without prejudice.

{8}     On November 26, 2013, Viall and Robinson filed a motion for summary judgment on the breach of fiduciary duty, constructive fraud, UDTP, and civil conspiracy claims. Among other assertions, Viall and Robinson challenged that Plaintiff had no basis to assert that they owed SEAC fiduciary duties, as they were mere employees without domination or control over Plaintiff's affairs, and that any claims related to the employment relationship could not support a UDTP claim.

{9}     On January 27, 2014, prior to the hearing on the motion for summary judgment, Plaintiff dismissed all claims against Viall and Robinson with prejudice, except for the conspiracy claim.

{10}    On April 1, 2014, Viall and Robinson filed a second motion for summary judgment on the remaining claims of civil conspiracy, asserting a total lack of evidence to support the claims. Plaintiff dismissed those claims with prejudice before further briefing and argument on the motion.

{11}    On July 25, 2014, Plaintiff voluntarily dismissed all remaining claims against all other Defendants.

{12}    On August 28, 2014, the Moving Defendants filed their motion for attorney's fees and costs, citing that Plaintiff failed to present credible evidence to support the claims alleged against the Moving Defendants. (Defs.' Br. Supp. Mot. Att'y's Fees and Costs ("Defs. Supp. Br.") 16.)

{13}    In opposition to this motion, Plaintiff submitted an affidavit from Gary Joseph Chandler ("Chandler Affidavit"), a former employee of SEAC and co-worker

of the alleged co-conspirators, to demonstrate that Plaintiff had a basis for asserting its allegations.

{14}  The Moving Defendants moved to strike the Chandler Affidavit on the basis that any information from Chandler should have been disclosed in response to the motions for summary judgment and should be stricken because of the clear prejudice to the Moving Defendants, who had not been given the opportunity to cross-examine Chandler.

## II.  MOTION TO STRIKE

{15}  The Court first determines whether it should allow the Chandler Affidavit as a part of the record on which the Court considers the Motion for Sanctions.  The Court need not determine whether Chandler's assertions are true. Rather, the Court must limit its consideration to those matters of which Chandler had personal knowledge, and then ask whether any such facts, combined with other competent evidence, gave Plaintiff a reasonable basis to believe that its claims had an adequate factual and legal basis.[1]  Plaintiff rejects the Moving Defendants' argument that they were prejudiced by an inability to interview or depose Chandler, countering that it fully cooperated with the Moving Defendants in seeking to locate Chandler.

{16}  In its discretion, the Court concludes that it should limit its consideration to those matters on which Chandler asserts the requisite personal knowledge, and then only to the extent it informs Plaintiff's reasonable belief that its claims had a legal and factual basis.  So limiting its consideration, the Motion to Strike is DENIED.

## III.  RELEVANT FACTUAL BACKGROUND

{17}  The Court is required to make findings of fact upon which it bases its decision on whether or not to allow fees pursuant to Rule 11, section 6-21.5, and

---

[1] The Court has considered the Motion to Strike on its merits in the Court's discretion even though it was not accompanied by a separate brief as required by Rule 15.2 of the General Rules of Practice and Procedure for the North Carolina Business Court.

section 75-16.1.  N.C. Gen. Stat. § 6-21.5 (2014); *McKinnon v. CV Indus., Inc.*, ___ N.C. App. ___, 745 S.E.2d 343, 350 (2013) (holding that to *award* attorney's fees under section 75-16.1, findings of fact are required); *Tucker v. The Blvd. at Piper Glen LLC*, 150 N.C. App. 150, 155–56, 564 S.E.2d 248, 251–52 (2002).  The Court's findings are limited to the Motion for Sanctions and for discerning Plaintiff's reasonable basis, if any, to believe evidence supported claims against the Moving Defendants, whether or not the ultimate finder of fact would find them to be true.

{18}     Plaintiff SEAC is in the business of air charters, air leases, and aircraft sales, maintenance, and repair.  At all times relevant to this dispute, William J. Henderson ("Henderson") and William C. Powell ("Powell") were its sole owners and directors.  At different points in time, Powell served as SEAC's vice president, treasurer, and secretary, and Henderson served as SEAC's president, treasurer, and assistant secretary.  As secretary, Powell was charged with keeping accurate records of director meetings and corporate books.  (Dep. Ex. 19 § V(11); SEAC 30(b)(6) Dep. Vol. I, 190:25–191:7, 194:10–:20.)  As treasurer, Henderson and Powell were given power over the corporation's assets.  (Dep. Ex. 19 § V(9); SEAC 30(b)(6) Dep. Vol. I, 190:25–191:7, 194:10–:20.)

{19}     Stroud replaced Henderson as president of SEAC around September 2006, and remained an officer of SEAC until September 5, 2008. (Stroud Dep. Vol. II 61:4–:9; 62:12. *But see* Dep. Ex. 19, at 24 (noting that Stroud's formal resignation occurred on October 1, 2008).)

{20}     Viall began working at SEAC as its Director of Operations under Stroud's supervision (Am. Compl. ¶ 40), with duties including developing flight operation policies, maintaining the safe operation of all aircraft owned or managed by SEAC, and insuring all dispatched aircraft were in compliance with the Federal Aviation Administration ("FAA") and company regulations (Am. Compl. ¶ 41 (a), (d)–(e); Viall Ans. ¶ 41(a), (d)–(e).)  Viall reported to Stroud and was expected to comply with the duties and tasks Stroud assigned to him.  (SEAC 30(b)(6) Dep. Vol. I 198:5–:16.)

{21}     Robinson worked under Stroud's supervision as SEAC's Charter Sales Manager and Bookkeeper (Am. Compl. ¶ 42; Robinson Aff. ¶ 2(g), Jan. 14, 2014; SEAC 30(b)(6) Dep. Vol. I 198:5–:16), with responsibilities including managing day-to-day activities, maintaining client contact information on a data system, providing daily support in response to client inquiries, generating new business with direct clients, and following up on leads for potential sales (Am. Compl. ¶ 43 (a)–(e); Robinson Ans. ¶ 43 (a)–(e).)  Robinson, in conjunction with Stroud, handled the money for SEAC, and maintained the corporation's checking account.  (SEAC 30(b)(6) Dep. Vol. I 49:9–:11; 87:17–:18; 145:11–146:4.)  Incident to that duty, Robinson was responsible for billing SEAC customers and had authority to write checks on behalf of SEAC.  (SEAC 30(b)(6) Dep. Vol. II 443:18–:19, 457:16–458:15.)

{22}     Steiner-Crowley served as SEAC's Assistant Sales Manager, assisting Robinson in her duties.  (Am. Compl. ¶¶ 45, 46.)  Steiner-Crowley ceased working for SEAC in early 2008, although the basis for her termination is disputed.  (*See* Am. Compl. ¶ 20.)  The Moving Defendants assert that she was terminated as a result of supporting Henderson's wife during a criminal-domestic case.  (Defs. Supp. Br. 19.)

{23}     During a February 27, 2013, deposition, Powell, appearing as Plaintiff's Rule 30(b)(6) designee, agreed that the Moving Defendants were all "run of the mill" employees taking direction from Stroud.  (SEAC 30(b)(6) Dep. Vol. I 226:5–:7.)  As noted below, the Court concludes that Plaintiff has not developed or offered competent evidence that, as employees rather than directors or officers, the Moving Defendants exerted an adequate degree of dominion or control over SEAC to create a fiduciary relationship.

{24}     In April 2008, Stroud incorporated Renaissance Jet.  (Stroud Dep. Vol. I 104:19–:22.)  He intended to either start his own aircraft maintenance, charter, and leasing company or eventually purchase all of SEAC's assets on behalf of Renaissance Jet.  (Stroud Dep. Vol. I 104:19–106:10.)  While employed as its president, Stroud considered purchasing SEAC and had discussed the prospect with Powell and Henderson.  (Barnum Aff. ¶ 13; Stroud Dep. Vol. I 54:1–:18.)

{25}    On or around September 5, 2008, Powell and Henderson met with Stroud concerning SEAC's corporate books.  Henderson offered to sell SEAC or its assets to Stroud at that time, but Stroud declined.  (Stroud Dep. Vol. II 66:8–:11.) He did not believe that SEAC was "worth saving," and resigned his position with SEAC.  (Stroud. Dep. Vol. II 62:10–:12.)

{26}    Renaissance Jet subsequently employed Viall and Robinson.  (Stroud Dep. Vol. I 113:25–116:19.)  SEAC contends that Robinson helped Stroud set up Renaissance Jet's offices while still employed by SEAC.  (SEAC 30(b)(6) Dep. Vol. II 341:12–:17.)

A. <u>Alleged Attempts to Devalue SEAC</u>

{27}    Plaintiff asserts that it has evidence of an agreement between the Moving Defendants and Stroud to devalue SEAC in furtherance of Stroud's plan to eliminate competition for Renaissance Jet.  That evidence primarily consists of an FAA fine against SEAC, two instances of improper crediting to SEAC accounts, and use of aircraft for personal flights.

{28}    SEAC was required to have a qualified individual serving as its Chief Pilot.  14 C.F.R. § 119.69(a)(2) (2014).  To serve as a Chief Pilot, "a person must hold an airline transport pilot certificate with appropriate ratings and be qualified to serve as pilot in command in at least one aircraft used in the certificate holder's operation," which meant, among other things, that the pilot must pass an instrument proficiency check every six months.  *Id.* §§ 119.71(c), 135.297.  Plaintiff asserts that, because SEAC's new Chief Pilot, whom Stroud had hired, was not qualified, Stroud and Viall caused SEAC to continue to register Matt Woodruff ("Woodruff") as its Chief Pilot after Woodruff had stopped working for SEAC.  (Am. Compl. ¶¶ 65, 67, 68.)

{29}    The FAA consequently fined SEAC $30,000 for failure to register a qualified Chief Pilot, as Woodruff had not undergone an instrument proficiency check in six months.  (Compl. Ex. 2; Am. Compl. Ex. 2.)  Based on their respective duties, it is likely that Robinson and Viall both knew of the fine.

{30}   Plaintiff has also developed evidence upon which a conclusion could be made that, at some point, Robinson and Stroud caused SEAC to improperly credit Luxury Butler $190,000 in connection with a sale and refurbishment of a helicopter (Stroud Dep. Vol. I 148:20–149:10, 156:14–17, 225:11–227:19) and to improperly credit Villa Katherine, in excess of $200,000 (SEAC 30(b)(6) Dep. Vol. II 361:12–364:19.)  Plaintiff was aware of the alleged improper credits to Luxury Butler at the outset of litigation and learned of the credits to Villa Katherine during the course of discovery.

{31}   The Chandler Affidavit supports information Plaintiff indicates it learned from a 2012 interview with Chandler: that the Moving Defendants also authorized and charged improper expenses to SEAC, such as personal flights. (Chandler Aff. ¶¶ 18(a)–(k).)

## B. Alleged Diversion of SEAC Property and Business

{32}   Plaintiff also contends that it had competent evidence that the Moving Defendants conspired to divert SEAC property to Stroud's companies.

{33}   SEAC maintained a contract with Progress Energy to fly over power line corridors and "look for anything that could cause [the power lines] to go down." (SEAC 30(b)(6) Dep. Vol. I 39:1–:5.)  While SEAC was still operating, Stroud transferred the contract to his company, Utility Helicopters, and continued to service the contract, flying aircraft that SEAC owned.  (Stroud Dep. Vol I. 45:9–:23, 48:1–:7; Chandler Aff. ¶ 20(b).)  During his deposition, Stroud confirmed that Robinson knew that he had taken the Progress Energy contract from SEAC. (Stroud Dep. Vol. I 50:2–:7.)   However, there is no concrete record evidence that the Moving Defendants assisted Stroud in transferring the contract pursuant to any agreement or common plan.

{34}   Chandler informed Plaintiff that SEAC property, including a refrigerator, grill, golf cart, and avionic equipment, was removed from SEAC's hangar and later surfaced in Renaissance Jet's possession.  (Chandler Aff. ¶ 18(i).) David Lomax, Director of Maintenance for SEAC, corroborated this claim and

informed SEAC's counsel that he witnessed Stroud and Viall removing this property and that Robinson was aware of their actions based on her position as Office Manager and discussions that Lomax had with her. (Neville Aff. ¶ 27(b).) Chandler also informed Plaintiff that Robinson was turning down organ-harvest flights on the basis that SEAC did not have an available aircraft when aircraft actually were available. (Chandler Aff. ¶ 23(a)–(c).)

{35} Plaintiff contends that this evidence of business and personal property diversion supports its theory that the Moving Defendants and Stroud conspired to enrich Stroud's companies at SEAC's expense.

## C. Allegations Regarding the "Eraser" Program

{36} Plaintiff asserts that the installation and use of an "eraser" program to delete incriminating evidence on SEAC's computers further supports its claim of concerted wrongful conduct.

{37} Chandler informed Plaintiff's counsel that he observed Viall and Robinson installing an eraser program on SEAC computers in the SEAC office on the same day that Powell and Henderson met with Stroud regarding SEAC's financial distress. (Chandler Aff. ¶ 22(a); Stroud Dep. Vol. II 60:25–61:19.) Nolan Williams ("Williams"), SEAC's accountant, corroborated this information in his deposition. Williams testified that, upon enlisting an individual to examine SEAC computers, he and Powell learned that certain documents were missing and were not recoverable. (Williams Dep. 19:23–20:9.) Robinson denies that she had any involvement in installing an eraser program on SEAC computers. (Robinson Aff. ¶ 3(c), Oct. 17, 2014).

{38} Again, Moving Defendants vigorously challenge each of these factual assertions. The Court need not decide whether a jury would likely find the evidence to be as Plaintiff contends. Rather, the question is whether Plaintiff should be sanctioned because it had no adequate basis from which to conclude that its claims had potential merit and should be prosecuted.

## IV.    LEGAL AUTHORITY AND CONCLUSIONS

{39}    The Court should also make conclusions of law when considering a motion for sanctions.  N.C. Gen. Stat. § 6-21.5; *The Blvd. at Piper Glen*, 150 N.C. App. at 155–56, 564 S.E.2d at 251–52; *see generally Friday v. United Dominion Realty Trust*, 155 N.C. App. 671, 575 S.E.2d 532 (2002) (holding an *award* of attorney's fees under section 75-16.1 requires that the trial court must make conclusions of law).

### A. Recovery of Costs under N.C. Gen. Stat. § 6-20 and Rule 41

{40}    Rule 41 provides that "[a] plaintiff who [voluntarily] dismisses an action or claim . . . shall be taxed with the costs of the action."  N.C. R. Civ. P. 41(d). In such cases, the trial court is required to assess all costs permitted under section 7A-305.  *Lord v. Customized Consulting Specialty, Inc.*, 164 N.C. App. 730, 734, 596 S.E.2d 891, 894–95 (2004).  This includes "[r]easonable and necessary expenses . . . for the cost of deposition transcripts."  N.C. Gen. Stat. § 7A-305(d)(10) (2014). Plaintiff objects to any award on this basis because, "[i]f not for the actions of the Movants, there would have not been any depositions."  (Pl.'s Br. Opp'n Defs.' Mot. Att'y's Fees and Costs and Req. Oral Arg. 37.)

{41}    On September 10, 2013, Plaintiff dismissed all claims against Steiner-Crowley.  On January 27, 2014, Plaintiff dismissed all claims against Robinson and Viall except the conspiracy claims, which claims it dismissed on April 24, 2014. The three Moving Defendants agreed to share costs on an equal basis.  Prior to these dismissals, the Moving Defendants each incurred $1,727.61 in acquiring deposition transcripts for Williams, Hugh Bingham,[2] SEAC, Frushone,[3] and Stroud. (Van Camp Aff. Ex. B.)  Each deponent's testimony related to the alleged conspiracy between the Moving Defendants, Stroud, Jennifer Stroud, Renaissance Jet, Utility Helicopters, Raleigh Heliport, Luxury Butler, and Frushone.  Therefore, it was

---

[2] Hugh Bingham testified on behalf of First Bank regarding an allegedly improper transaction between Luxury Butler and SEAC.

[3] Christopher Frushone, a member-manager of Luxury Butler, testified regarding an allegedly improper transaction between his company and SEAC.

reasonable and necessary that the Moving Defendants' attorney acquire a copy of each deposition transcript and attempt to use the testimony to defend claims against his clients.

{42}    Accordingly, the Moving Defendants are entitled to recover and Plaintiff shall pay the Moving Defendants the requested costs, totaling $5,182.83, pursuant to Rule 41(d).

{43}    Having made this award pursuant to Rule 41, the Court need not award further costs under section 6-20, which provides that, "where allowance of costs is not otherwise provided by [law], costs may be allowed in the discretion of the court." N.C. Gen. Stat. § 6-20 (2014). But for the award under Rule 41, the Moving Defendants would be entitled to those costs pursuant to section 6-20.

## B. Award of Attorneys' Fees Pursuant to Rule 11

{44}    Every pleading must be signed by an attorney, or if the filing party is unrepresented, the party himself. N.C. Civ. P. Rule 11(a).

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Id.*

> If, given the knowledge and information which can be imputed to a party, a reasonable person under the same or similar circumstances would have terminated his or her inquiry and formed the belief that the claim was warranted under existing law, then the party's inquiry will be deemed objectively reasonable.

*Bryson v. Sullivan*, 330 N.C. 644, 661–62, 412 S.E.2d 327, 336 (1992) ("*Bryson II*").

{45}    If a pleading is signed in violation of Rule 11, the court must impose sanctions upon the signing attorney, the represented party, or both. N.C. R. Civ. P. 11. These sanctions "may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, . . .

including a reasonable attorney's fee." *Id.* "[I]n determining compliance with Rule 11, courts should avoid hindsight and resolve all doubts in favor of the signer." *Johnson v. Harris*, 149 N.C. App. 928, 938, 563 S.E.2d 224, 230 (2002) (internal quotations and citations omitted). A pleading is measured by its factual sufficiency and its legal sufficiency.

### i. Factual Sufficiency

{46} For a pleading to be factually sufficient under Rule 11, the signatory must have undertaken a reasonable inquiry into the facts and, based upon that inquiry, reasonably believed that his position was well grounded in fact. *McClerin v. R-M Indus.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995) (citing *Higgins v. Patton*, 102 N.C. App. 301, 306, 401 S.E.2d 854, 857 (1991)).

{47} Although not necessary to its conclusions below, the Court notes that, early in the litigation, it observed the sweeping breadth of Plaintiff's claims against the array of defendants, with few specific factual allegations directed at them. At the initial case management conference and thereafter, the Court has cautioned Plaintiff that it was likely that it would face a motion for sanctions if it failed to develop supporting factual evidence, and that it should proceed with awareness of this likelihood.

{48} After careful review, without needing to conclude whether such facts are true, the Court finds that Plaintiff made a reasonable inquiry before determining that allegations were well grounded in fact and "susceptible of proof" that Viall and Robinson converted and trespassed upon SEAC's personal property, unjustly enriched themselves and Stroud's companies at SEAC's expense, concealed material facts from SEAC, tortiously interfered with SEAC's existing and prospective contracts, and did so pursuant to a common agreement or plan for the Stroud companies' benefit and at SEAC's expense, which conduct might rise to an actionable UDTP claim. *See Page v. Roscoe, LLC*, 128 N.C. App. 678, 686, 497 S.E.2d 422, 427 (1998). Before initiating the action, Plaintiff had evidence, which it believed to be true, that Stroud misappropriated SEAC's contract with Progress

Energy and that Robinson and Viall likely knew about this misappropriation. Plaintiff had also learned directly from Chandler that Robinson and Viall removed personal property from SEAC's premises and authorized personal air charter services without charging clients. Based on reports from Chandler regarding organ-harvest flights, Plaintiff formed a reasoned suspicion that Robinson was turning down potential business for SEAC. Finally, Plaintiff had a reasoned suspicion that Robinson, Viall, or both, ran an eraser program on SEAC computers to destroy certain documents. When viewed together, these facts form a factually sufficient basis to allege the above claims against Robinson and Viall in compliance with Rule 11.

{49} However, after review of the complete record, the Court finds no actual or proffered evidentiary basis for the assertion that Steiner-Crowley was involved in any of the above acts, had knowledge of them, or explicitly or implicitly joined in any conspiracy. The Court concludes that Plaintiff had no reasonable, factual basis to believe it had adequate support for any claim against Steiner-Crowley at the time of filing the Complaint.

{50} The Court likewise concludes that, at the time of filing the Complaint, Plaintiff had no reasoned basis to believe that Robinson or Viall owed Plaintiff fiduciary duties as a result of their employment. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Similarly, Plaintiff's constructive fraud claim requires a fiduciary relationship. *Ward v. Fogel*, ___ N.C. App. ___, 768 S.E.2d 292, 300 (2014), *review denied*, 771 S.E.2d 302 (N.C. 2015). Plaintiff was well aware that Robinson and Viall were not officers with corresponding fiduciary duties. Nevertheless, Plaintiff asserted that their duties gave them dominion over the company and its employees, making them "*de facto* officers." (Pl.'s Br. Opp'n Russell Viall and Karen Robinson's Mot. Partial Summ. J. 13 (citing *Tai Sports v. Hall*, 2012 NCBC LEXIS 64, at *48 (N.C. Super. Ct. Dec. 28, 2012).) There is not now and has not been a factual basis for Plaintiff to so conclude. Plaintiff admitted as much when its Rule 30(b)(6) designee confirmed

that the Moving Defendants were "run of the mill" employees who took direction from Stroud. (SEAC 30(b)(6) Dep. Vol. I 226:5–:7.)

{51} In sum, Plaintiff was aware when first filing the action and again when amending its Complaint that it had no factual basis to assert its claims against Steiner-Crowley or its claims for breach of fiduciary duty and constructive fraud against Viall and Robinson.

{52} The Court then concludes that limited Rule 11 sanctions are appropriate for having filed the claims for which Plaintiff had no reasonable basis to believe were factually supported.

### ii. Legal Sufficiency

{53} The Court must separately examine whether there was a reasoned basis to conclude that there was support in existing law, as it might reasonably be expanded, for Plaintiff's claims that lack an adequate factual basis. *Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 249, 515 S.E.2d 457, 460 (1999). On this question, the movant bears the burden of persuasion. *Bryson v. Sullivan*, 102 N.C. App. 1, 12, 401 S.E.2d 645, 654 (1991), *aff'd in part, rev'd in part on other grounds*, 330 N.C. 644, 412 S.E.2d 327 (1992) ("*Bryson I*"). If the court determines that the pleading is implausible under existing law, the court will examine "whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the complaint was warranted by the existing law." *Id.* (internal quotations and citations omitted). The reasonableness of the belief that the complaint is warranted by existing law should be judged as of the time the document was signed. *Lincoln v. Bueche*, 166 N.C. App. 150, 156, 601 S.E.2d 237, 243 (2004).

{54} As to claims against Robinson and Viall, other than for breach of fiduciary duty and constructive fraud, the Court concludes that Plaintiff "undertook a reasonable inquiry into the law and formed a reasonable belief that the complaint was warranted by existing law." *See Page*, 128 N.C. App. at 686, 497 S.E.2d at 427. While the UDTP claim may not have been supported solely by reason of the employment relationship between Plaintiff and the Moving Defendants, it was

reasonable to pursue a UDTP claim assuming the success of the other underlying claims.

### iii.  Improper Purpose

{55}  "The improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements." *Bryson II*, 330 N.C. at 663, 412 S.E.2d at 337.  An improper purpose is any purpose other than to vindicate one's rights and may be inferred from the individual's behavior.  *Ward v. Jett Props., LLC*, 191 N.C. App. 605, 609, 663 S.E.2d 862, 865 (2008).  "There must be a strong inference of improper purpose to support imposition of sanctions." *Bass v. Sides*, 120 N.C. App. 485, 488, 462 S.E.2d 838, 840 (1995).

{56}  The Court finds there is not an adequate record to support a finding that Plaintiff brought its claims for an improper purpose.

## C.  Award of Attorneys' Fees Pursuant to N.C. Gen. Stat. § 6-21.5

{57}  Defendants also move for recovery of attorneys' fees and costs under section 6-21.5, which provides the trial court with authority to award reasonable attorneys' fees to the prevailing party "if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading."  N.C. Gen. Stat. § 6-21.5.[4]

{58}  In ruling on a motion for sanctions brought under section 6-21.5, the trial court must "evaluate whether the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he

---

[4] The Court notes its uncertainty as to whether the Moving Defendants can first properly be considered "prevailing parties" within section 6-21.5's and section 75-16.1's meaning.  *Compare Bryson v. Sullivan*, 220 N.C. 644, 664, 412 S.E.2d 327, 338 (1992) (noting that a defendant who was voluntarily dismissed with or without prejudice could be considered a prevailing party, but omitting criteria), *with H.B.S. Contractors v. Cumberland Cty.*, 122 N.C. App. 49, 57–58, 468 S.E.2d 517, 523 (1996) (applying a merits test to determine whether the plaintiff was the prevailing party, which requires that the party "succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit").  In any case, excepting the claims for which the Court has found inadequate factual support at the time they were alleged, the Court determines that justiciable issues remained and that the claims were not frivolous.  Therefore, it need not decide the prevailing party question.

filed no longer contained a justiciable issue." *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 258, 400 S.E.2d 435, 438 (1991).

{59}    Justiciable issues are those that are "real and present as opposed to the imagined or fanciful." *Id.* at 257, 400 S.E.2d at 437 (internal quotation omitted). Appellate case law indicates that, on examining whether a justiciable issue is absent, a trial court must give the losing party's pleadings "the indulgent treatment which they receive on motions for summary judgment or to dismiss." *Sprouse v. N. River Ins. Co.*, 81 N.C. App. 311, 326, 344 S.E.2d 555, 565 (1986).  In other words, the Court will view the facts in the light most favorable to Plaintiff.

{60}    Upon review of the record, the Court finds that real and present issues remained throughout the litigation as to whether Viall and Robinson converted and trespassed upon SEAC's personal property, were unjustly enriched at SEAC's expense, committed unfair and deceptive trade practices, concealed material facts from SEAC, tortiously interfered with SEAC's existing and prospective contracts, and did so pursuant to an agreement or common plan to benefit themselves, Stroud, or his companies at SEAC's expense.

{61}    Plaintiff's prosecution of the claims for breach of fiduciary duty and constructive fraud, brought in violation of Rule 11, would also support imposition of fees under section 6-21.5.

### D. N.C. Gen. Stat. § 75-16.1

{62}    In any lawsuit where a UDTP violation is alleged, the presiding judge may, in his discretion, "allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party." N.C. Gen. Stat. § 75-16.1 (2014).  For a defendant to recover attorney's fees under section 75-16.1, he must establish that "he is the prevailing party, that [the p]laintiff knew, or should have known the claim was frivolous and malicious, and that the requested fee is reasonable." *Basnight v. Diamond Devs., Inc*, 178 F. Supp. 2d 589, 592 (M.D.N.C. 2001) (citing N.C. Gen. Stat. § 75-16.1).  Such an award is within "the sound discretion of the trial judge." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433,

460, 678 S.E.2d 671, 688 (2009) (quoting *Castle v. McCullogh, Inc. v. Freedman*, 169 N.C. App. 497, 504, 610 S.E.2d 416, 421–22 (2005)).

{63}   On reviewing the record, the Court finds no basis for determining that Plaintiff's UDTP claim against Robinson and Viall was either malicious or frivolous. Claims are not "frivolous" simply because they are weak. *Cincinnati Ins. Co. v. Dynamic Dev. Grp., LLC*, 336 F. Supp. 2d 552, 566–67 (M.D.N.C. 2004). The Court does not find Plaintiff's UDTP claim so frivolous as to justify the imposition of fees.

## V.   CONCLUSION

{64}   For the foregoing reasons:

1. Defendants' Motion to Strike Affidavit of Gary Joseph Chandler is DENIED.

2. Defendants' Motion for Attorney's Fees and Costs is DENIED in part and GRANTED in part.

3. Defendant Steiner-Crowley is entitled to an award of reasonable attorneys' fees, but only for the fees she incurred defending claims asserted against her.

4. Defendants Robinson and Viall are entitled to an award of reasonable attorneys' fees, but only for defense of the claims for breach of fiduciary duty and corresponding constructive fraud.

5. Defendants Steiner-Crowley, Robinson, and Viall are entitled collectively to recover as costs the total sum of $5,182.83.

6. Moving Defendants' counsel shall, on or before thirty days from the date of this Order, submit a further affidavit attesting to attorneys' fees incurred, specific to the claims for which the Court has determined sanctions should be entered for lack of factual support. If counsel contends the Court should apportion fees incurred for efforts that were devoted to the defense of both those claims and claims for which the Court has determined that sanctions are not appropriate, counsel shall

provide support for this claim and the requested method of apportionment.

IT IS SO ORDERED this the 30th day of June, 2015.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases